THE JAMES BAILEY COMPANY *vs.* ARTHUR E. DARLING, et al.

Cumberland.    Opinion October 25, 1920.

*Partnership. Elements necessary to constitute. There must be some contract, express or implied, between the parties. Sharing in profit and loss does not necessarily constitute a partnership. There must be a communty of interest and of property.*

Whether a partnership exists or not is an inference of law from the established facts, and the relation is based upon some contract, express or implied, between the parties.

The mere fact of participation in profit and loss does not necessarily constitute a partnership; an essential element of a partnership is a community of interest in the subject matter of it; but community of interest alone does not make a partnership.

Such a community of interest involves a community of property as well as of profits, from which arises the right of each partner to make contracts, incur liabilities, manage the whole business, and dispose of the whole property of the partnership, for its purposes, in the same manner and with the same power, as all the partners could when acting together, with the right of the survivors, upon the death of a partner, to retain and dispose of the partnership effects for the settlement of its affairs.

However the rule of partnership liability may be stated, an agent or servant, whose compensation is measured by a certain portion of the profits of the business in which he is employed, is not thereby made a partner in the business; and receiving a share of such profits in lieu of or in addition to interest, by way of a compensation for a loan of money, has of itself no greater effect.

It is a fair conclusion from the evidence that the position of the defendant, Carr, was not that of a partner, but was that of a money lender, who, having optimistic views of profits derived from the automobile business, was willing to measure his compensation for the accomodation by a share in the profits. His advances did not constitute capital. In such case there is no partnership.

The question, "Whether or not it was generally understood by the people in the garage and the customers that Mr. Carr and Mr. Darling were partners?" was rightly excluded.

Where a witness has been fully examined on a certain matter, the right of the presiding Justice in his discretion to limit further examination on the same point cannot be doubted.

This is an action of assumpsit brought by the plaintiff, a corporation, to recover for merchandise sold and delivered, amounting with interest to $167.06. The plaintiff attempts to charge the defendant, S. P. H. Carr, with liability as a partner with the other defendant, Arthur E. Darling, who offered no defense, having two years prior filed a petition in bankruptcy as an individual. Defendant Carr filed a plea of the general issue, and also filed an affidavit denying partnership. At the conclusion of the plaintiff's testimony on motion by counsel for the defendant, the presiding Justice ordered a non suit, and plaintiff took exceptions, and plaintiff also took two exceptions as to admission and exclusion of evidence. Exceptions overruled.

The case is fully stated in the opinion.

*Max L. Pinansky, and Dennis A. Meaher,* for plaintiff.

*Maurice E. Rosen,* for defendant.

SITTING: CORNISH, C. J., SPEAR, HANSON, PHILBROOK, MORRILL, WILSON, JJ.

MORRILL, J. The plaintiff claims to charge the defendant, Carr, with liability as partner with the defendant, Darling, for a bill of automobile supplies and accessories charged by the plaintiff on its books to A. E. Darling, and delivered to said Darling or at a garage operated under the name of A. E. Darling. The articles were delivered between February 28, 1916, and June 3, 1916, at which time plaintiff did not know that defendants had been in any way associated in business. The plaintiff claims to have discovered after Darling became bankrupt that the defendants were in partnership from about August 15, 1915, to February 15, 1916, in the management of said garage, and says that no notice of dissolution of the partnership was given.

In this case the question of estoppel is not involved; Mr. Carr did not hold himself out to the plaintiff as a partner, and they did not know of the alleged partnership for several months after the goods were

sold.  Under these circumstances it is incumbent upon the plaintiff to prove that a partnership in fact existed between the defendants.

Whether a partnership existed or not is an inference of law from the established facts, (*Dwinel* v. *Stone*, 30 Maine, 384; *Cummings Mfg. Co.* v. *Smith*, 113 Maine, 351) and the relation is based upon some contract, express or implied, between the parties.  *Dunham.* v. *Lovelock*, 158 Pa. St., 197; 38 Amer. St. Rep. 838.  As was said by Judge Cooley in *Beecher* v. *Bush*, 45 Mich., 188, 40 Amer. R. 465, 472:  "Except when one allows the public or individual dealers to be deceived by the appearances of partnership when none exists, he is never to be charged as a partner unless, by contract and with intent, he has formed a relation in which the elements of partnership are to be found;" and in the same case:  "It is possible for parties to intend no partnership and yet to form one.  If they agree upon an arrangement which is a partnership in fact, it is of no importance that they call it something else, or that they even expressly declare that they are not to be partners.  The law must declare what is the legal import of their agreements, and names go for nothing when the substance of the arrangment shows them to be inapplicable."  In this case the agreement between the defendants was not in writing; its terms must be determined from the testimony, which seems to establish the following facts:

For about one year prior to August, 1915, the defendant, Darling, had been in the automobile business, occupying a garage on Union Street, in Portland, and in that business had dealt with the plaintiff; in that month he made an arrangement with the defendant, Carr, by which they were to engage in the business of selling automobiles, Carr furnishing money to finance the business in consideration of receiving one-half the net profits.  Mr. Darling is the only witness who testifies to this agreement; we therefore give it in his own words:

"Q.  Tell the jury just what the proposition was in the first place when you and Mr. Carr became associated in any business?

A.  Mr. Carr said he would like to get in the automobile game, and I had a chance to take on the Oldsmobile car, and Mr. Carr and I talked it over, and he said he would like to go in with me on it, and he said he would furnish—finance to buy the cars, and when a car was sold I was to pay him back the money that he loaned me to buy the cars, and I to work without a salary on the Chandler and Oldsmobile, and what profit we took in was to pay the overhead expenses, and if there was any profit left we was to equally divide it, and then

afterward we got a chance to take on the Chandler and we did the same, had the same conversation and the same transaction, some cars here in town, and he paid for them, and if there was any profit he was supposed to have half of it.   Nothing drawn up, any writings or anything, one way or the other.

    .    .    .    .    .    .    .

Q.   (BY THE COURT):  In your arrangement with Mr. Carr at the outset, was anything said about the sharing of losses, or on whom losses should fall if losses were made?   Was that subject gone into, and if so, in what way?

A.   Your HONOR, I can't remember that it was ever brought up." He further testifies that, "there was nothing said about interest of the money."

For this business a store on Congress Street was leased in the name of Mr. Darling, Mr. Carr standing good for the rental, which was paid from the business as other expenses; it does not appear that Mr. Carr was called upon to pay on his guaranty.   In November, 1915, Darling took over the agency for the Chandler car in his name, assuming the liabilities; Carr gave a bond to the representatives of the former agents and they gave Carr a bond that the bills taken over were all good.   The business was carried on in the name of A. E. Darling; the bank account stood in his name, and he managed all details, conferring with Carr as to the purchase of cars.

From time to time as payments for cars became due Mr. Carr furnished the money to pay for them, and as each car was sold, he was repaid from the proceeds the amount advanced for that particular car, and the balance was used to pay the expenses of the business. After September Darling gave notes to Carr for the purchase price of the cars; that was not the original agreement.

No division of profits was made; the expenses consumed all the profit from the sale of the cars.   In February, 1916, the arrangement was terminated.   To again quote from Darling's testimony:  "We had four cars coming in that our contract called for for that month, and I asked Mr. Carr for the money to finance the bill of lading, and he refused to let me have it, said he couldn't furnish it.   Of course they were coming and I had to get it elsewhere, and that was agreeable to Mr. Carr."   Thus ended all dealings between the defendants, and Darling continued the business for a time.

The plaintiff argues that the relation thus established constituted a partnership; this the defendant, Carr, denies and claims that his advancements were loans made in consideration of Darling's promise that he should receive one-half the net profits of the business for the accommodation.

This opinion need not be extended by a discussion of the rule of partnership liability, and of the exceptions and limitations which have been engrafted upon the early rule that participation in the profits of a business renders the recipient a partner as to third persons, in the business from which such profits are derived. *Waugh* v. *Carver*, 2 H. Bl. 235; 1 Smith Lead. Cas. *908, 8th Ed. 1316; *Eastman* v. *Clark*, 53 N. H. 192, 16 Am. Rep., 192. The subject has been fully discussed in this state. *Dwinel* v. *Stone*, 30 Maine, 384; *Knowlton* v. *Reed*, 38 Maine, 246, holding that the mere fact of participation in profit and loss does not necessarily constitute a partnership, that an essential element of a partnership is a community of interest in the subject matter of it, and defining the characteristics of that community of interest; but community of interest alone does not make a partnership. *Woodward* v. *Cowing*, 41 Maine, 9; *Braley* v. *Goddard*, 49 Maine, 115; *Winslow* v. *Young*, 94 Maine, 145, 160.

However the rule of partnership liability may be stated, it must be considered settled that an agent or servant, whose compensation is measured by a certain portion of the profits of the business in which he is employed, is not thereby made a partner in the business, and that receiving a share of such profits in lieu of or in addition to interest, by way of compensation for a loan of money, has of itself no greater effect. *Meehan* v. *Valentine*, 145 U. S., 611; Law Ed. Bk. 36, Pages 835, 841. Additional authorities are collected in 115 Amer. St. Rep. 400, at Pages 439, 441, and in 18 L. R. A. (N. S.) 963, at Pages 1019, 1032, 1047, 1055.

The difficulty in each case arises in determining whether there has been a bona fide loan of money to the proprietor of the business, or whether a relation, having the essential elements of a partnership, has been formed, from which the court must declare that a partnership exists. In the instant case the advances did not constitute capital, were not contributed as capital, but were to be, and were, repaid from the sale price of each car, and the balance only became assets of the business. There was no mortgage given, but the arrangement was in effect, between the parties, like a pledge of each car for

the repayment of the purchase price. It is a fair conclusion from the evidence that Mr. Carr's position was not that of a partner, but was that of a money lender, who, having optimistic views of profits derived from the automobile business, was willing to measure his compensation for the accommodation by a share in the profits. In such case there is no partnership. *Richardson* v. *Hughitt*, 76 N. Y., 55, 32 Amer. Rep., 267, 269. So where the money advanced is to be repaid in all events without regard to the profits, there is no partnership; to have that effect, the payment must depend upon the profits. *Eager* v. *Crawford*, 76 N Y. 97. In a later New York case, *Hackett* v. *Stanley*, 115 N. Y. 625, the court reviewed the cases and, while holding that a loan may be made in aid of an enterprise on conditions by which the lender may secure a limited or qualified interest in the profits, said that "when the agreement extends beyond this and provides for a *proprietary* interest in the profits as a compensation for money and time and services bestowed, *as a principal in its prosecution*," the rule requires that such party be held as a partner; and so held in that case upon the ground that the defendant was to render service as a principal.

In this class of cases the determining factor is the existence or non-existence of such community of interest that the parties are "mutually principals of and agents for each other, with general powers within the scope of the business," subject, however, to the limitation of those powers, as between the parties, by agreement. *Beecher* v. *Bush*, supra. The cases on this point are collected in a note to *Brotherton* v. *Gilchrist*, (144 Mich., 274) 115 Amer. St. Rep., 420. Such a community of interest involves a community of property as well as of profits, from which "arises the right of each partner to make contracts, incur liabilities, manage the whole business, and dispose of the whole property of the partnership, for its purposes, in the same manner and with the same power, as all the partners could when acting together," with the right of the survivors, upon the death of a partner, to retain and dispose of the partnership effects for the settlement of its affairs. *Dwinel* v. *Stone*, 30 Maine, 384, 386; *Knowlton* v. *Reed*, 38 Maine, 246. For one to share in the profits as profits, and thus to become liable as a partner, is "to stand in such relations to the business that the profits, or a share of them, are in his ownership as they accrue. He must have a proprietary interest in each dollar of profits as it is earned, so that he then has a right of possession or con-

trol of it for the purpose of retaining his share. This involves an ownership of an interest in the business that produces the profits. Through this comes the implied agency on which the liability of a partner for the contracts of his copartners is founded." *Estabrook* v. *Woods*, 192 Mass., 499, 503.

Nothing of the kind is apparent in this case; the right of the defendant, Carr, to a share of the profits was not based upon a common ownership of the property or profits, but was a personal obligation of Darling. Carr was not a principal, and had no control over the business; this is clear from their course of dealing and the manner in which their relations were terminated. The case is clearly distinguishable from *Bearce* v. *Washburn*, 43 Maine, 564. The defendants clearly did not intend to establish a partnership; the defendant, Carr, agreed to make advances for the purchase of the cars, to be repaid when the cars were sold, and he was at liberty to cease the advances at any time. The authorities upon the question of the intent of the parties as bearing upon the partnership relation are collected in 115 Amer., St. Rep. 412. In the absence of evidence that Carr held himself out as a partner, he cannot be charged as a partner by operation of law. Other pertinent cases are *Loomis* v. *Marshall*, 12 Conn., 69; *Dunham* v. *Rogers*, 1 Penn. St., 255; *Perrine* v. *Hankinson*, 11 N. J. L. 181; *Denny* v. *Chabot*, 6 Met., 82; *Bradley* v. *White*, 10 Met., 303; *Harvey* v. *Childs*, 28 Ohio St., 319, 22 Amer. Rep., 387.

The non suit was rightly ordered.

The other exceptions of plaintiff require only brief mention. Exceptions were not taken at the trial to the first five rulings mentioned in the bill of exceptions. Counsel apparently acquiesced in those rulings; they were clearly right.

The sixth exception is to the exclusion of the following question propounded to a witness who worked in the garage: "Whether or not it was generally understood by the people in the garage and the customers that Mr. Carr and Mr. Darling were partners?" The question was rightly excluded.

The seventh and last exception cannot be sustained. The question excluded was leading in form, and the witness had already been fully examined on the subject matter. The right of the presiding Justice to limit further examination on the same point, in his discretion, cannot be doubted.

*Exceptions overruled.*