CUMBERLAND COUNTY POWER & LIGHT COMPANY, PLAINTIFF

*vs.*

BENJAMIN M. GORDON, DEFENDANT.

York.      Opinion, July 21, 1939.

214

*John S. S. Fessenden,* for plaintiff.
*Brooks Whitehouse,*
*Berman & Berman* (Lewiston, Maine), for defendant.

SITTING: DUNN, C. J., BARNES, THAXTER, HUDSON, MANSER, JJ.

HUDSON, J.    On defendant's exceptions to acceptance of Referee's report.

The plaintiff sues to recover compensation for "electric light and cooking service" and balance of purchase price for sale of certain restaurant equipment. As to both, the Referee reported for the plaintiff.

Late in 1934 or early in 1935, the defendant, together with Max Gordon and Samuel Gordon, then all of Lewiston, formed a co-

partnership "for the purpose of Delicatessen & Restaurant in the city . . . of Lewiston under the partnership name of Gordon's Delicatessen." On May 27, 1935 they made and caused to be filed in the city clerk's office in Lewiston certificate of association in accordance with Section 4 of Chapter 44, R. S. 1930.

They carried on the partnership business in Lewiston until April, 1936 when the defendant agreed in writing to retire and sold all his rights and interests in the partnership to his co-partners. Upon his retirement, however, he did not file in the clerk's office a withdrawal certificate.

Following his withdrawal, Max and Samuel Gordon transacted business under the same name in Lewiston.

In April, 1937, Max and Samuel opened a "delicatessen and restaurant" in Portland and so conducted it. No new certificate was filed in the clerk's office in Portland.

Following the defendant's withdrawal, he had nothing whatever to do with the business either in Lewiston or in Portland.

The items sued were contracted at the Portland store. The restaurant equipment was purchased under a conditional sales contract which was signed:

"Gordon's Delicatessen
By Max Gordon
By Sam Gordon
608 Congress St.
Portland, Maine"

It is not contended that the defendant personally had anything to do with this purchase or with the furnishing of the electric service.

On December 7, 1937 Max and Samuel made a common-law assignment of the assets to one Lessard for the benefit of creditors. The plaintiff, notified of the assignment, refused to assent to it, but afterwards did accept and collect a dividend check from the assignee, designated as "First & Final Dividend—9.6%," signed "Gordon's Delicatessen by: ALTON A. LESSARD, Assignee," and bearing on its back the following notation:

"In full satisfaction of all claims against Max Gordon, Sam Gordon & Alton A. Lessard, Common Law Assignee."

The plaintiff (as under the conditional sales contract it had the right to do) repossessed the property, sold it, and credited it on its indebtedness.

The plaintiff bases its right to recover on said Section 4 which reads:

"Whenever two or more persons become associated as partners or otherwise for the purpose of engaging in any mercantile enterprise, they shall, before commencing business, deposit in the office of the clerk of the city or town in which the same is to be carried on, a certificate signed and sworn to by them, setting forth their names and places of residence, the nature of the busines in which they intend to engage, and giving the name under which they are to transact business. Whenever any member of such partnership or association withdraws therefrom, he may certify under oath to the fact of such withdrawal, which certificate shall be deposited in the clerk's office where the partnership certificate is recorded; and he shall conclusively be presumed to be a member of the firm or association to the time of his depositing such certificate."

Under this statute, because of the failure to file the withdrawal certificate, there could be no question as to the liability of this defendant had the remaining partners, after his withdrawal, contracted·new indebtedness *in its Lewiston store* within the actual or apparent scope of the partnership business.

At common law the voluntary assignment of the interest of any member of a partnership at will worked a dissolution.

As stated in *Smith* v. *Virgin*, 33 Me., at page 156:

"In a partnership at common law with no agreement to continue for any specified time, or to qualify in any manner the principles ordinarily applicable, a dissolution takes place on the assignment of the interest of any member."

Also see 20 R. C. L., Section 178, page 954, to the effect that every change in the personnel of a firm works a dissolution and a new partnership is formed whenever a partner retires or a new one is admitted. Also see Story on Partnership, Sections 269, 272, 302, and 307.

As to the common-law effect of the dissolution of a partnership, Mr. Story says in Section 334:

". . . the dissolution of a partnership, whether it be by the voluntary act or will of the parties, or by the retirement of a partner, or by mere efflux of time, will not in any manner change the rights of third persons, as to any past contracts and transactions with, or on account of the firm; but their obligation and efficacy and validity will remain the same, and be binding upon the partnership in the same manner, as if no dissolution had taken place. In the next place, such a dissolution will not absolve the partners from liabilities to third persons for the future transactions of any partners, acting for, or on account of the firm, unless some one or more of the following circumstances occur. (1.) That the third persons dealing with, or on account of the firm, have due notice of the dissolution; or, (2.) That they have had no transactions whatsoever with the firm until after the dissolution; or, (3.) That the partnership was not general, but limited to a particular purchase, adventure, or voyage, and terminated therewith before the transaction took place; or, (4.) That the new transaction is not within the scope and business of the original partnership; or, (5.) That it is illegal, or fraudulent, or otherwise void from its defective nature or character; or, (6.) That the partner, sought to be charged, is a dormant partner, to whom no credit was actually given, and who retired before the transaction took place."

To what extent does this statute enacted in 1915 modify the common law as to the effect of a dissolution by the withdrawal of a partner? It provides a particular manner in which the notice of the withdrawal shall be given and then states that unless the notice is so given the withdrawing partner shall be presumed conclusively to be a member of the firm or association to the time he does file his withdrawal certificate.

Still, that does not mean that the retiring partner is conclusively presumed to be liable for every debt that the remaining members of the partnership may thereafter contract. The effect of the conclusive presumption in the absence of estoppel is limited to such

obligations as could have been lawfully contracted by the partnership had there been no withdrawal of the partner.

A partnership is usually defined to be a voluntary contract between two or more competent persons to place their money, effects, labor, and skill, or some or all of them, in lawful commerce or business with the understanding that there shall be a community of profits thereof between them. *Bearce* v. *Washburn et al.*, 43 Me., 564, 565; *Banchor* v. *Cilley*, 38 Me., 553, 555. It is founded in the voluntary contract of the parties as distinguished from the relations which may arise between the parties by mere operation of law independent of such contract. See Story, Sections 2 and 3. The contract may be either oral or in writing (here it was oral) and for no definite length of time. Many times has it been said that the law of partnership is a branch of the law of agency. A partner, so far as his own interest is concerned, acts as principal, but as agent as to his partners' interests. The scope of the business is governed by the partnership contract and the partners are not otherwise bound unless the contract be modified or there be estoppel.

"During the continuance of a general or commercial partnership each member has a right to bind his associates to the performance of every contract he may make in the name of the firm, within the limits allowed by the articles of association; but he cannot bind it by any contracts beyond those limits." 20 R. C. L., Section 104, page 893.

In the instant case there are no facts permitting the application of the doctrine of estoppel.

"A retiring partner sustains no relation to the remaining members which actually authorizes them to bind him, and whenever a retiring partner is held liable for the debts of the continuing partners, the liability is based on principles of estoppel." 20 R. C. L., Section 216, page 982.

The fact of the failure to file the withdrawal certificate would not constitute an estoppel in favor of this plaintiff. *Hanzes* v. *Flavio*, 234 Mass., 320, 328, 125 N. E., 612; *Crompton* v. *Williams*, 216 Mass., 184, 187, 103 N. E., 298.

". . . the failure to file a certificate on withdrawal as required by law, will not estop a partner from showing his retirement where there is nothing to indicate that the creditor ever heard of his partnership connection or relied on it in any way." 47 C. J., Section 599, page 1035.

Then was this indebtedness incurred within the actual or apparent scope of the original partnership business? This partnership, as it clearly appears from its certificate filed in the clerk's office in Lewiston, was only "for the purpose of Delicatessen & Restaurant *in the city . . . of Lewiston* under the partnership name Gordon's Delicatessen." (*Italic scoring* ours.) By the recording of this certificate, notice of the limitation of the scope of the business was given. The defendant never entered into any partnership contract whereby a delicatessen or restaurant business could be carried on in any place other than in Lewiston. He withdrew from the partnership and actually retired. Under the statute he would still be held to be a member of the firm as to business transacted within its actual or apparent scope carried on in Lewiston, because he didn't file a withdrawal certificate, but not so as to that transacted following his retirement by the remaining partners in the City of Portland. Without his consent, they could not enlarge the scope of the original business and thus against his will make him a party to a different contract.

We cannot conceive that it was the intention of the legislature to create liability upon the part of a retiring partner for indebtedness incurred following retirement outside of the actual or apparent scope of the partnership business. The purpose of the statute is effected when we interpret it to mean only that one who withdraws from a partnership and does not file a certificate of withdrawal (there being no actual estoppel) is conclusively presumed still to be a member of it when carrying on business within either its actual or apparent scope.

*Exceptions sustained.*