**Emily DALTON**

v.

**Whitney W. AUSTIN, Sr.**

Supreme Judicial Court of Maine.

Argued March 3, 1981.

Decided July 22, 1981.

Paine & Lynch, Martha J. Harris, John D. Bunker, Bangor (orally), for plaintiff.

Fenton, Griffin, Chapman, Smith & Fenton, William Fenton, Bar Harbor (orally), for defendant.

Before McKUSICK, C. J., and WERNICK, GODFREY, NICHOLS and GLASSMAN,* JJ.

NICHOLS, Justice.

The Plaintiff, Emily Dalton, (formerly Emily Ruebsamen), appeals from a judgment for the Defendant, Whitney W. Austin, Sr., entered by the Superior Court in Penobscot County after a jury-waived trial on her complaint for conversion of certain financial contributions she had made to a business in Bangor known as The Small Change Restaurant, of which Austin was originally the sole proprietor.

In March of 1974, the Plaintiff and Defendant reached an oral agreement concerning the business, the exact terms of which were the subject of conflicting testimony at trial. The Plaintiff, who had had prior experience in the restaurant business, testified that she and the Defendant agreed to be equal partners in the restaurant and that, in consideration of certain financial contributions she was to make to the business, the Defendant agreed to incorporate the business, turn those business assets to which he had title over to the corporation, and distribute stock to the Plaintiff and himself. It appears, however, that the Plaintiff did not expect the business to be incorporated until after she became involved in its operation.

The Defendant testified that he and the Plaintiff agreed to become partners and that in consideration for being made a part-

---

* GLASSMAN, J., sat at oral argument and participated in the initial conference, but died before this opinion was adopted.

ner, the Plaintiff initially contributed her automobile to the business. The Defendant's understanding of the agreement differed from the Plaintiff's, however, in that he did not recall promising to turn assets over to the corporation, or to have stock issued and distributed. Rather, his testimony suggests that the agreement contemplated that the Plaintiff would ultimately purchase the restaurant, thus leaving him "free and clear" of the business, a circumstance the Defendant desired for reasons of health and overwork. In response to questions posed by opposing counsel as to whether the Defendant agreed to transfer assets in his name to the corporation and distribute stock to the Plaintiff, the Defendant testified that he did not remember or understand that arrangement but thought the heart of the agreement to be the Plaintiff's ultimate purchase of the entire business.

After the agreement was made, the Defendant no longer took an active part in management of the restaurant; the Plaintiff, on the other hand, operated the business on a day-to-day basis for several months. In the months that she managed the restaurant, the Plaintiff made major financial contributions to the business totalling $18,214.89. She made these contributions by directly paying the debts and operating expenses of the business. The Defendant testified that he had no knowledge of the nature or extent of her payments on behalf of the business and that he never personally received them.

Under the Plaintiff's management, business income declined dramatically. After operating the business for several months, the Plaintiff finally asked the Defendant to distribute the stock and transfer the assets. The record does not disclose whether the business was ever incorporated. Stock, however, was never distributed, and the Defendant's testimony suggests that ownership of business-related assets was never transferred to a corporation. Instead, a closing date for sale of the restaurant to the Plaintiff was set. On the advice of her attorneys, however, she ultimately refused to purchase the business from the Defend-

ant and he eventually closed the business when its management totally failed. Thereafter, he made several attempts to lease profitably the business and finally sold it to a lessee. The proceeds from the sale, according to the Defendant's testimony, were used to pay mortgagees and creditors whose claims apparently exceeded the gain from the sale. The Defendant claims to have paid the balance out of personal funds.

At trial, after testimony by the two parties was heard, the presiding justice found for the Defendant. The justice specifically found that the parties were partners and that their original agreement created a partnership. From that finding, he concluded that neither party had a cause of action for restitution or conversion. In response to the request of the Plaintiff's counsel for a specific finding on whether an agreement existed between the parties in which the Defendant was obliged to transfer assets to the corporation and distribute stock, the court declined to rule on the specifics of any such agreement. Rather, the court limited its ruling to finding generally that a partnership agreement existed and that any controversy over the business arising out of the partnership was properly the subject of an action for an accounting between partners.

On appeal here, the Plaintiff contends the Superior Court erred in finding a partnership and in concluding that an action for conversion or money had and received was inappropriate.

We affirm the judgment below.

We must uphold the Superior Court's conclusion that a partnership existed if competent evidence exists on the record to support that legal conclusion.

The Plaintiff argues that the Superior Court erred in concluding a partnership existed because no evidence of co-ownership or sharing of profits appears on the record.

■ Under the Uniform Partnership Act, 31 M.R.S.A. § 281 *et seq.*, which Maine adopted in 1973, as under the common law,

the existence of a partnership is an inference of law based on established facts. *See Roux v. Lawand,* 131 Me. 215, 160 A. 756 (1932); *The James Bailey Co. v. Darling,* 119 Me. 326, 111 A. 410 (1920); 31 M.R.S.A. §§ 285, 286, 287 (1978). Under the Act, a partnership is defined as "an association of 2 or more persons ... to carry on as co-owners a business for profit."

■ Evidence relevant to the existence of a partnership includes evidence of a voluntary contract between two persons to place their money, effects, labor, and skill, or some or all of them, in lawful commerce or business with the understanding that a community of profits will be shared. *See Cumberland County Power & Light Co. v. Gordon,* 136 Me. 213, 218, 7 A.2d 619, 622 (1939). No one factor is alone determinative of the existence of a partnership, but the record before us supports the finding of the Superior Court.

■ While the specifics of the agreement were in dispute, evidence of an agreement between the parties existed. That agreement clearly related to operation of a business. Assets used in the business and capital contributions to the business were made by both parties. They consistently testified that both regarded themselves as partners. Finally, the Plaintiff actively managed the business for several months.

■ The Plaintiff contends, nevertheless, that there is no evidence of co-ownership or a sharing of profits. Under the Uniform Act, the concept of co-ownership does not necessarily mean joint title to all business assets. *See Matter of Thornton's Estate,* 14 Wash.App. 397, 400, 541 P.2d 1243, 1246 (1975); *Fullam v. Peterson,* Sup., 21 N.Y.S.2d 797, 799 (1940). Rather, as the commentary to the Uniform Act suggests, the right to participate in control of the business is the essence of co-ownership. *See* Official Comment, *Uniform Partnership Act* § 6, 6 Uniform Laws Ann. 23 (1969).[1]

Contrary to this Plaintiff's contention, then, the record sufficiently supports the existence of co-ownership inasmuch as it reveals that she actively managed the business for several months without the supervision of the Defendant. While the record is devoid of evidence that the parties shared profits, sharing is not required if, as the evidence shows in this case, the agreement itself implies that the parties contemplated the sharing of profits. In the case before us evidence of actual sharing of profits was naturally absent, given the financial straits of the business.

We conclude that the Superior Court did not err in concluding that Austin and Dalton were engaged in a partnership.

The Plaintiff also argues that the Defendant is liable to her for conversion under theories of unjust enrichment or quasi-contract. The Superior Court clearly rejected this argument on grounds that the controversy between the parties over monies spent by Dalton for the business arose out of the partnership itself, and thus the only appropriate remedy under Maine law was an action for accounting.

■ Under the Uniform Partnership Act, partners have a fiduciary responsibility toward the partnership which obliges them to account for disposition of partnership property. 31 M.R.S.A. §§ 301, 302 (1978). Section 302 of the Act, in pertinent part, gives any partner the right to an account in a wide variety of circumstances, many of which closely resemble the circumstances of the instant case. In particular, section 302(1) gives a partner who has been "wrongfully excluded from the partnership business or possession of its property by his copartners" a right to a formal account. Similarly, section 302(3) gives any partner the right to an account pursuant to the fiduciary duties of every partner set forth in § 301. Section 301 provides in part as follows:

1. The draftsman of the Model Act noted in the Comment following section 6:

The definition asserts that the associates are "co-owners" of the business. This distinguishes a partnership from an agency—an association of principal and agent. A business is a series of acts directed toward an end. Ownership involves the power of ultimate control. To state that partners are co-owners of a business is to state that they each have the power of ultimate control.

Every partner must account to the partnership for any benefit and hold as trustee for it any profits derived by him without the consent of the other partners from any transaction connected with the formation, conduct or liquidation of the partnership or from any use by him of its property.

■ These provisions reflect a strong legislative preference, borrowed from the common law, for efficient settlement of partnership disputes involving complex and multifarious aspects in a single proceeding. *See Willmann & Associates v. Penseiro,* 158 Me. 1, 176 A.2d 739 (1962); *Waldo Lumber Co. v. Metcalf,* 132 Me. 374, 171 A. 395 (1934).

Thus, other courts have consistently held that an action derived from the common law brought by one partner against another is inappropriate when the subject matter of the action is directly related to partnership business or property. *E. g., Newburger, Loeb & Co., Inc. v. Gross,* 563 F.2d 1057, 1075–77 (2nd Cir. 1977); *cert. denied,* 434 U.S. 1035, 98 S.Ct. 769, 54 L.Ed. 2d 782 (1978); *Manok v. Fishman,* 107 Cal.Rptr. 255, 31 Cal.App.3d 208, 107 Cal.Rptr. 266 (1973); *Clark v. Edris,* 120 Ariz. 244, 585 P.2d 264 (1978); *Bondy v. Davis,* 40 Mich.App. 153, 198 N.W. 2d 418 (1972); *Rice v. Lambert,* 408 S.W.2d 287 (Tex.Civ.App.1966). In particular, this rule has been applied to actions for conversion of partnership property, actions necessarily involving breaches of fiduciary duty. *Newburger, Loeb, Inc. v. Gross, supra. See Duncan v. Bruce,* 179 Misc. 992, 43 N.Y.S.2d 447 (1943); Crane & Bromberg, *Partnership* 369 (1968).

■ In the case before us, the appropriateness of resolving the dispute between the parties through an action for an accounting is clear. The Superior Court concluded that a partnership agreement existed between the parties and that the restaurant business was conducted in the form of a partnership. Once an agreement to form the partnership was struck and business proceeded accordingly, it is apparent that the money the Plaintiff sought to recover in this action was funds spent by her in the course of conducting the partnership business. The circumstance that the parties may have agreed to do business in the corporate form at some later date does not alter the essential character of the form of the business association. *See B.K.K. Co. v. Schultz,* 86 Cal.Rptr. 760, 766–67, 7 Cal. App.3d 786, 796–97 (1970).

The Plaintiff attempts to distinguish her action from the general rule precluding independent actions on grounds that it rests on a separate legal obligation arising out of the Defendant's alleged promise to incorporate the business, turn assets over to the corporation and distribute stock. In so arguing, she is suggesting that her claim falls within a select group of exceptions to the rule limiting a partner's remedies to an accounting.

Actions by one partner against another in tort or for restitution on a theory of implied contract or unjust enrichment have been allowed by courts in other jurisdictions when the wrong which a plaintiff alleged constituted an injury to an individual in contrast to a partnership interest. *E. g., Katz v. Powers,* 92 Misc.2d 892; 401 N.Y.S. 2d 720 (1978) (action on personal debt). Similarly, independent actions have been allowed when the affairs of a partnership are really wound up and the issues before the court can be resolved without extensive study of the partnership accounts. *E. g., Auld v. Estridge,* 86 Misc.2d 895, 899–902, 382 N.Y.S.2d 897, 900–02 (1976), *aff'd mem.,* 58 A.D.2d 636, 395 N.Y.S.2d 969 (1977); *Kolb v. Dietz,* 454 S.W.2d 632, 637 (Mo. App.1970). The record before us indicates that the basis of this Plaintiff's claim is intimately related to partnership affairs. Moreover, the record is replete with confusion and ambiguity concerning the winding up of the partnership as well as the manner in which the partnership property was ultimately liquidated. These circumstances both suggest the prudence of settling the dispute between these two litigants in one comprehensive proceeding for an account and provide adequate support for the finding below that an independent action was inappropriate.

We conclude that there was no error when the Superior Court entered judgment for the Defendant.

The entry will be:

Appeal denied.

Judgment affirmed.

All concurring.