Robert J. LUPIEN

v.

Frederick V. MALSBENDEN.

Supreme Judicial Court of Maine.

Argued June 4, 1984.

Decided July 6, 1984.

Strater, Hancock & Erwin, P.A., Nicholas S. Strater (orally), York, for plaintiff.

James J. Fitzpatrick, Portsmouth, N.H. (orally), for defendant.

Before McKUSICK, C.J., and NICHOLS, ROBERTS, WATHEN, GLASSMAN and SCOLNIK, JJ.

McKUSICK, Chief Justice.

Defendant Frederick Malsbenden appeals a judgment of the Superior Court (York County) holding him to partnership liability on a written contract entered into between plaintiff Robert Lupien and one Stephen Cragin doing business as York Motor Mart.[1] The sole issue asserted on appeal is whether the Superior Court erred in its finding that Malsbenden and Cragin were partners in the pertinent part of York Motor Mart's business. We affirm.

On March 5, 1980, plaintiff entered into a written agreement with Stephen Cragin, doing business in the town of York as York Motor Mart, for the construction of a Bradley automobile.[2] Plaintiff made a deposit of $500 towards the purchase price of $8,020 upon signing the contract, and made a further payment of $3,950 one week later on March 12. Both the purchase order of March 5, 1980, and a later bill of sale, though signed by Cragin, identified the seller as York Motor Mart. At the jury-waived trial, plaintiff testified that after he signed the contract he made visits to York Motor Mart on an average of once or twice a week to check on the progress being made on his car. During those visits plaintiff generally dealt with Malsbenden because Cragin was seldom present. On one such visit in April, Malsbenden told plaintiff that it was necessary for the latter to sign over ownership of his pickup truck, which would constitute the balance of the consideration under the contract, so that the proceeds from the sale of the truck could be used to complete construction of the Bradley. When plaintiff complied, Malsbenden provided plaintiff with a rental car, and later with a "demo" model of the Bradley, for his use pending the completion of the vehicle he had ordered. When it was discovered that the "demo" actually belonged to a third party who had entrusted it to York Motor Mart for resale, Malsbenden purchased the vehicle for plaintiff's use. Plaintiff never received the Bradley he had contracted to purchase.

In his trial testimony, defendant Malsbenden asserted that his interest in the Bradley operation of York Motor Mart was only that of a banker. He stated that he had loaned $85,000 to Cragin, without interest, to finance the Bradley portion of York

---

1. Cragin "disappeared" several months before this action was commenced. Plaintiff Lupien originally named Cragin as a co-defendant. However, since Cragin was never served with process, the Superior Court at the behest of both Lupien and defendant Malsbenden dismissed the claim against Cragin.

2. A Bradley automobile is a "kit car" constructed on a Volkswagen chassis.

Motor Mart's business.[3] The loan was to be repaid from the proceeds of each car sold. Malsbenden acknowledged that Bradley kits were purchased with his personal checks and that he had also purchased equipment for York Motor Mart. He also stated that after Cragin disappeared sometime late in May 1980, he had physical control of the premises of York Motor Mart and that he continued to dispose of assets there even to the time of trial in 1983.

The Uniform Partnership Act, adopted in Maine at 31 M.R.S.A. §§ 281–323 (1978 & Supp.1983–1984), defines a partnership as "an association of 2 or more persons ... to carry on as co-owners[1] a business for profit." 31 M.R.S.A. § 286 (1978). Whether a partnership exists is an inference of law based on established facts. *See Dalton v. Austin*, 432 A.2d 774, 777 (Me.1981); *Roux v. Lawand*, 131 Me. 215, 219, 160 A. 756, 757 (1932); *James Bailey Co. v. Darling*, 119 Me. 326, 328, 111 A. 410, 411 (1920). A finding that the relationship between two persons constitutes a partnership may be based upon evidence of an agreement, either express or implied,

> to place their money, effects, labor, and skill, or some or all of them, in lawful commerce or business with the understanding that a community of profits will be shared .... No one factor is alone determinative of the existence of a partnership....

*Dalton v. Austin*, 432 A.2d at 777; *Cumberland County Power & Light Co. v. Gordon*, 136 Me. 213, 218, 7 A.2d 619, 622 (1939). *See James Bailey Co. v. Darling*, 119 Me. at 328, 111 A. at 411. If the arrangement between the parties otherwise qualifies as a partnership, it is of no matter that the parties did not expressly agree to

form a partnership or did not even intend to form one:

> It is possible for parties to intend no partnership and yet to form one. If they agree upon an arrangement which is a partnership in fact, it is of no importance that they call it something else, or that they even expressly declare that they are not to be partners. The law must declare what is the legal import of their agreements, and names go for nothing when the substance of the arrangement shows them to be inapplicable.

*James Bailey Co. v. Darling*, 119 Me. at 328, 111 A. at 411 (quoting *Beecher v. Bush*, 45 Mich. 188, 193–94, 7 N.W. 785, 785–86 (1881)).

Here the trial justice concluded that, notwithstanding Malsbenden's assertion that he was only a "banker," his "total involvement" in the Bradley operation was that of a partner. The testimony at trial, both respecting Malsbenden's financial interest in the enterprise and his involvement in day-to-day business operations, amply supported the Superior Court's conclusion. Malsbenden had a financial interest of $85,000 in the Bradley portion of York Motor Mart's operations. Although Malsbenden termed the investment a loan, significantly he conceded that the "loan" carried no interest. His "loan" was not made in the form of a fixed payment or payments, but was made to the business, at least in substantial part, in the form of day-to-day purchases of Bradley kits, other parts and equipment, and in the payment of wages. Furthermore, the "loan" was not to be repaid in fixed amounts or at fixed times, but rather only upon the sale of Bradley automobiles.

The evidence also showed that, unlike a banker, Malsbenden had the right to partic-

---

**3.** Malsbenden's testimony indicated that Cragin carried on an automotive repair business at the York Motor Mart that was unrelated to the Bradley operation. Malsbenden testified, without contradiction, that he had no involvement with that other business.

**4.** As we made clear in *Dalton v. Austin*, 432 A.2d 774, 777 (Me.1981), the term "co-owners" as used in the statute does not necessarily mean joint title to all assets. On the contrary, "the right to participate in control of the business is the essence of co-ownership." *Id.*

ipate in control of the business and in fact did so on a day-to-day basis.[5] According to Urbin Savaria, who worked at York Motor Mart from late April through June 1980, Malsbenden during that time opened the business establishment each morning, remained present through part of every day, had final say on the ordering of parts, paid for parts and equipment, and paid Savaria's salary. On plaintiff's frequent visits to York Motor Mart, he generally dealt with Malsbenden because Cragin was not present. It was Malsbenden who insisted that plaintiff trade in his truck prior to the completion of the Bradley because the proceeds from the sale of the truck were needed to complete the Bradley. When it was discovered that the "demo" Bradley given to plaintiff while he awaited completion of his car actually belonged to a third party, it was Malsbenden who bought the car for plaintiff's use. As of three years after the making of the contract now in litigation, Malsbenden was still doing business at York Motor Mart, "just disposing of property."

Malsbenden and Cragin may well have viewed their relationship to be that of creditor-borrower, rather than a partnership. At trial Malsbenden so asserts, and Cragin's departure from the scene in the spring of 1980 deprives us of the benefit of his view of his business arrangement with Malsbenden. In any event, whatever the intent of these two men as to their respective involvements in the business of making and selling Bradley cars, there is no clear error in the Superior Court's finding that the Bradley car operation represented a pooling of Malsbenden's capital and Cragin's automotive skills, with joint control over the business and intent to share the fruits of the enterprise. As a matter of law, that arrangement amounted to a partnership under 31 M.R.S.A. § 286.

5. Thus its facts clearly distinguish the case at bar from *James Bailey Co. v. Darling*, 119 Me. 326, 332, 111 A. 410, 413 (1920), where although the defendant advanced money for the purchase

The entry is:

Judgment affirmed.

All concurring.

of automobiles that was to be repaid upon the sale of individual automobiles, the defendant had no control over the business.