Robert E. **KNOWLES**

v.

Grover **SPRAGUE, et al.**

Supreme Judicial Court of Maine.

Argued June 13, 1988.

Decided July 21, 1988.

Alton C. Stevens (orally), Marden, Dubord, Bernier & Stevens, Waterville, for plaintiff.

Arlyn H. Weeks (orally), Conley, Haley & O'Neil, Bath, for Spragues.

James W. Gallagher (orally), Gallagher & Stein, Damariscotta, for Francis Soule.

Before McKUSICK, C.J., and ROBERTS, WATHEN, GLASSMAN, SCOLNIK, CLIFFORD and HORNBY, JJ.

HORNBY, Justice.

This appeal presents the issue whether there was sufficient evidence to go to a jury on partnership liability and on damages. The Superior Court granted the Defendants' motions for a directed verdict at the close of the Plaintiff's case. Concluding that the case should have been presented to the jury,[1] we vacate the judgment of the Superior Court and remand for a new trial.

The Plaintiff, Robert E. Knowles, was in the business of purchasing x-ray film from hospitals and doctors' offices and then selling it to businesses that salvaged the plastic or the silver contained on the film. He did business under the name Maine X–Ray. Sprague Plastics agreed to purchase such film. The purchase amount was determined as follows. For every 100 lbs. of post–1975 film, Sprague Plastics agreed to pay 15 troy ounces of fine silver or its cash equivalent. For pre–1976 film, Sprague Plastics agreed to pay 18.5 troy ounces of fine silver or its cash equivalent. For unprocessed film Sprague Plastics agreed to pay 28 troy ounces of fine silver or its cash equivalent. Knowles delivered substantial quantities of film to Sprague Plastics under this agreement and took back quantities of film that Sprague Plastics did not wish to keep. Knowles also received two bars of silver that had been refined from the silver that Sprague Plastics derived from the film. Knowles prepared delivery slips reflecting the various deliveries made and film taken back. In addition, he prepared and sent to Sprague Plastics an invoice for the net amount that he claimed was due. The Defendants Grover and Donald Sprague were intimately involved in the Sprague Plastics operation. The Defendant Francis Soule contributed substantial money to the business and had other involvement, but the parties disagree on whether he was a partner or simply a lender. Knowles brought suit against both Spragues and Soule[2] alleging a breach of contract in their failure to pay him fully under the agreement.

At trial, Knowles testified concerning his relationship and dealings with Sprague Plastics and his practices in preparing the delivery slips and the invoice. He also introduced testimony and portions of the deposition of Donald Sprague, portions of the depositions of Francis Soule and Grover Sprague, and the testimony of Francis Soule's wife, Carolyn Soule. After the Plaintiff rested, the court granted Francis Soule's motion for a directed verdict on the grounds that no factfinder could infer from the record that Francis Soule was a partner in the Sprague Plastics operation. The court also granted the Defendant Spragues' motion for a directed verdict for lack of sufficient evidence concerning the calculation of damages. The Plaintiff's counsel moved to reopen the case to put Knowles back on the stand to testify in that respect. The court denied the motion to reopen. The Plaintiff has appealed, challenging the court's ruling on Francis Soule's status as a partner, on damages, and on the refusal to permit re-opening.[3]

## PARTNERSHIP

█ Under Maine partnership law, partners are liable jointly for any obligations of the partnership. 31 M.R.S.A. § 295 (1978). But "persons who are not partners as to each other are not partners as to 3rd persons." 31 M.R.S.A. § 287(1) (1978). Thus,

1. We reiterate that "directed verdicts should be granted sparingly, as the exception rather than the rule." *Arbour v. Hazelton,* 534 A.2d 1303, 1305 (Me.1987).

2. He also sued Soule's wife, Carolyn Soule, but has not challenged the directed verdict in her favor.

3. Because we conclude that the case should have been presented to the jury, we do not reach the issue whether the Plaintiff should have been permitted to reopen.

Francis Soule is liable to the Plaintiff only if he and Grover Sprague were partners as to each other.[4] A partnership is "an association of 2 or more persons ... to carry on as co-owners a business for profit." 31 M.R.S.A. § 286 (1978). This Court has stated that, although "the right to participate in control of the business is the essence of co-ownership," "[n]o one factor is alone determinative of the existence of a partnership." *Dalton v. Austin*, 432 A.2d 774, 777 (Me.1981). If the arrangement otherwise qualifies "it is of no matter that the parties did not expressly agree to form a partnership or did not even intend to form one." *Lupien v. Malsbenden*, 477 A.2d 746, 748 (Me.1984).

Francis Soule, Donald Sprague, and a lawyer all testified that Grover Sprague (Donald Sprague's father) and Francis Soule never reached an agreement on partnership and that Francis Soule simply loaned money to Sprague Plastics in contemplation of ultimately reaching some such agreement.[5] But there was other evidence that Grover Sprague and Francis Soule were in fact partners during the relevant period. Grover Sprague testified, "The business became a partnership later with Francis Soule, Jr., and Grover Sprague," speaking of a time before the business was incorporated in April, 1981. He also testified concerning a decision Francis Soule and he made with respect to the structure of the business. Donald Sprague testified, "[I]nitially the company was, my definition was, I guess you'd say it was Dad's company. And shortly thereafter it was Dad and Sonny [Francis] Soule's, I guess. From the formal standpoint, that's when it began as a company." When the question was asked, "After a certain period of time [Grover Sprague] brought in a partner?", Donald Sprague responded, "Right." He made another reference to the partnership stating, "[A]gain I don't remember the exact date that Sonny

[Francis] Soule come [sic] in as Dad's partner, but even from the beginning I spent considerable time in the traveling and meeting people." Francis Soule testified about his involvement stating, "When I was involved we went to Massachusetts and bought the film and it was shipped in by UPS. We bought the x-ray.... We went to places, I believe, in Boston and Rhode Island and bought some film." Moreover, Francis Soule testified that he accepted a receipt prepared by Grover Sprague that stated "payment on partnership to be applied to final settlement." Francis Soule also testified that he signed a federal tax return for the 1981 tax year that took a deduction for the Sprague Plastics partnership. Schedule 4255 to that return specifically listed him as a partner. The amended 1040 for 1981, although prepared in 1983, still listed him as a partner.

Thus, although the testimony is conflicting, there is evidence here that Francis Soule and Grover Sprague believed themselves partners, that another person intimately involved believed them to be partners, that Francis Soule participated in the business, and that he had the right to participate in control. The partnership issue should therefore have gone to the jury. *See Moore v. Fenton*, 289 A.2d 698, 700 n. 1 (Me.1972).

## DAMAGES

■ Knowles testified that the final figures on the invoice he sent Sprague Plastics were correct. The invoice showed a balance due and reflected adjustments for such matters as incorrect calculations, the silver Knowles had received, and interest for failure to pay in a timely fashion. Knowles testified generally as to how the amount due was calculated, describing the different silver formulas used for the various types of film and the application of market value for silver to troy ounces to determine its dollar equivalent. He did not

---

4. The Plaintiff has not argued that Francis Soule was a partner by estoppel. *See* 31 M.R.S.A. §§ 287(1), 296 (1978).

5. The lawyer's testimony was actually part of the Defendant Francis Soule's direct case and was entertained out of order by agreement.

testify as to any particular market values.[6] The Defendant Spragues moved for a directed verdict at the close of the Plaintiff's case on the grounds that the Plaintiff had failed to meet his burden of proof on damages and that any damages a jury might award would be speculative. It is clear from the court's questioning that the court granted the motion because the Plaintiff had failed to provide evidence of the market value of silver for each particular transaction.

 The invoice statement of a balance due was admitted into evidence without restriction. No challenge was ever made to the lack of foundation for this written statement and thus it became "consent evidence ... to be given its natural and probative effect." Field & Murray, *Maine Evidence* § 103.1, at 5–6 (2d ed.1987). It is true, as the Spragues argue, that their failure to object to the admission of the exhibit was not an admission that the amount set forth in the invoice was actually due.[7] Although the jury was therefore not compelled to conclude that the amount was accurate, the Defendants did allow into evidence, without objection, the written statement that a particular amount was due. That became an item for the jury's consideration without the detail of the backup calculations. Moreover, Knowles testified that in fact the final calculations (which the invoice reflected) were accurate. This was not, then, simply the Plaintiff's opinion testimony of what was due, and a jury verdict based on this evidence would not have been speculative. Obviously, if there were any issue concerning accuracy or the application of the market value figures, the Defendants were fully able to cross-examine Knowles concerning the invoice or concerning his testimony on accuracy and were able to introduce their own evidence to counter any inaccuracies. Admission of the invoice with testimony concerning the accuracy of the calculations was sufficient proof of damages to withstand the motion for a directed verdict.

The entry is:

Judgment vacated.

Remanded for new trial.

All concurring.

---

6. The invoice does show a market value for both the silver that Knowles received from Sprague Plastics and another credit.

7. The Defendant Spragues also argue that the Plaintiff failed to prove a demand upon the Defendant. The Plaintiff did testify, however, that he had tried to reach a settlement with the Spragues and had been unable to do so. The statement in the Appellee's brief that this testimony had been objected to is inaccurate. That testimony was already in evidence; counsel's objection was sustained to a later portion of the Plaintiff's answer.