FEDERAL DEPOSIT INSURANCE CORP., as Receiver of New Maine National Bank, Plaintiff,

v.

Roger E. LAPIERRE and Leona M. Lapierre, Blue Water Inn, Inc. and Bank Meridian, N.A., Defendants,

and

EPL Limited Partnership and Edward N. Lehoullier, Parties in Interest.

Civ. No. 91–350 P–C.

United States District Court, D. Maine.

May 27, 1992.

Randall Weill, Preti, Flaherty, Beliveau, Pachios, Portland, Me., for F.D.I.C.

James Noucas, Mulvey & Noucas, Portsmouth, N.H., for Leona Lapierre.

Dennis Bezanson, South Portland, Me., for Roger Lapierre.

Bradley Moulton, Ogunquit, Me., for Blue Water Inn and EPL Ltd. Partnership, party in interest.

William Dunn, Berwick, Me., for Edward Lehoullier, party in interest.

## MEMORANDUM AND ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT.

GENE CARTER, Chief Judge.

This case, seeking recovery for certain debts allegedly owed to Plaintiff's predecessor in interest and foreclosure on mortgages given to Plaintiff's predecessor in interest, was originally filed in Maine Superior Court in November, 1989. It was removed to this Court in November, 1991, by the Federal Deposit Insurance Corporation (FDIC), as receiver for Defendant Bank Meridian,[1] pursuant to 12 U.S.C. § 1819(b)(2)(A) and (B). Count III of the complaint alleges that Defendant Roger Lapierre has failed to pay Maine National Bank amounts due under two guaranties and two notes executed in its favor and that he has breached the terms and conditions of mortgages securing those obligations. Also in Count III, which is now before the Court on Plaintiff's motion for summary judgment, Plaintiff seeks foreclosure and sale of the premises described in the mortgages. Defendant Roger Lapierre filed a timely objection to the motion. Defendant Leona Lapierre, wife of Roger Lapierre, who is not specifically referenced in Count III, filed an untimely objection to the motion, in which she joins in the objection and supporting documents of Roger Lapierre.

A motion for summary judgment must be granted if:

[T]he pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.

Fed.R.Civ.P. 56(c). The Court of Appeals for the First Circuit has aptly articulated the legal standard to be applied in deciding motions for summary judgment:

[T]he movant must adumbrate 'an absence of evidence to support the nonmoving party's case.' *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 [106 S.Ct. 2548, 2554, 91 L.Ed.2d 265] (1986). When that is accomplished, the burden shifts to the opponent to establish the existence of a fact issue which is both 'material,' in that it might affect the outcome of the litigation, *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 [106 S.Ct. 2505, 2510, 91 L.Ed.2d 202] (1986); *Hahn v. Sargent*, 523 F.2d 461, 464 (1st Cir.1975), *cert. denied*, 425 U.S. 904 [96 S.Ct. 1495, 47 L.Ed.2d 754] (1976), and 'genuine,' in that a reasonable jury could, on the basis of the proffered proof, return a verdict for the opponent. *Anderson*, 477 U.S. at 248, [106 S.Ct. at 2510]; *Oliver v. Digital Equipment Corp.*, 846 F.2d 103, 105 (1st Cir.1988). It is settled that the nonmovant may not rest upon mere allegations, but must adduce specific, provable facts demonstrating that there is a triable issue. 'The evidence illustrating the factual controversy cannot be conjectural or problematic; it must have substance in the sense that it limns differing versions of the truth which a factfinder must resolve at an ensuing trial.' *Mack v. Great Atlantic and Pacific Tea Co.*, 871 F.2d 179, 181 (1st Cir.1989). As the Supreme court has said:

[T]here is no issue for trial unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party. If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted.

*Brennan v. Hendrigan*, 888 F.2d 189, 191 (1st Cir.1989). In support of its motion, Plaintiff has presented the following undisputed facts based on the affidavit of Chris-

---

**1.** Bank Meridian, N.A., a national banking corporation with its principal place of business in New Hampshire, was named as a Defendant in this suit when it was originally filed by Maine National Bank in Maine Superior Court in 1989. As described *infra*, Maine National Bank failed, and ultimately the FDIC, as receiver, took over its assets, including this suit which was pending in state court. On October 10, 1991, Bank Meridian failed, and the FDIC was also appointed as liquidating agent/receiver for that institution. The FDIC as receiver for Defendant Bank Meridian removed the case, which, as now postured, pits the FDIC against the FDIC and other Defendants.

topher Frohock, Loan Recovery Officer for Recoll Management Corp., the attorney-in-fact for the FDIC.

## I.

Komwave, a New Hampshire Corporation doing business in Maine, entered into an agreement with Maine National Bank in March 1985 under which it would pay all amounts due under a New Hampshire Industrial Development Authority Revenue Bond (IRB) in the amount of $600,000. In connection with this agreement, Komwave executed and delivered to Maine National Bank a loan and security agreement. Defendant Roger Lapierre secured the bond purchase agreement with a personal guaranty agreement dated March 1, 1985. The guaranty was secured by a mortgage executed on March 19, 1985, by Mr. and Mrs. Lapierre [2] conveying real estate in Ogunquit, Maine referred to as the Bridge Street House to Maine National Bank. The guaranty and guaranty mortgage provide that Plaintiff may recover the costs and expenses, including attorney's fees, of protecting its security and collecting these debts.

Komwave defaulted on its obligations under the bond purchase agreement and related loan agreement. Both Komwave and Lapierre were notified of the defaults in September, 1989. The defaults were not cured, and the debt has not been paid. Defendant therefore has breached the terms of the guaranty and the guaranty mortgage and is in default on those obligations.

In October, 1990, Komwave filed for bankruptcy in the Bankruptcy Court for the District of New Hampshire. Also, the Comptroller of the Currency of the United States appointed the FDIC as Receiver for Maine National Bank in January 1991. New Maine National Bank was chartered as a bridge bank, assuming certain assets from the FDIC, including the loans in-volved in this proceeding. In July 1991, New Maine National Bank was dissolved and the FDIC was appointed as its receiver. Defendant's indebtedness is, therefore, to the FDIC.

The record shows that the principal owed on the Lapierre IRB guaranty and guaranty mortgage was $450,000, as of January 21, 1992, and that the interest to that date was $169,556.75 for a total indebtedness of $619,556.75. Interest continues to accrue on this obligation at the rate of $74.48 per day.

## II.

On March 5, 1987, Roger Lapierre also executed and delivered to Maine National Bank a demand note with the ceiling amount of $200,000, giving another mortgage on the Bridge Street House to secure it. The note and mortgage provided that the bank could recover any costs and expenses, including attorney's fees, incurred in protecting the security or recovering on the note and mortgage. In March, 1989, Maine National Bank demanded payment of the note. Despite the demand, Lapierre has failed to pay the amounts due, and is therefore in default on both the note and the mortgage. As of April 13, 1992, the total indebtedness owed under the $200,000 note and mortgage, exclusive of costs and attorney's fees, is $197,653.12 in principal and $58,483.48 in interest, for a total of $256,136.60, with interest continuing to accrue at $46.67 per day.[3] One specific cost owed by Defendants is an appraisal fee of $500. Because of the change in corporate structure of Maine National Bank detailed above, this debt is now owed by Defendant to Plaintiff FDIC.

## III.

On October 9, 1987, Komwave executed and delivered to Maine National Bank a demand note in the ceiling amount of $200,-

---

**2.** The court notes that although Mrs. Lapierre joins as grantor of this mortgage, she does not appear as owner of the property. She does not join as grantor of the other mortgages on the same property upon which relief is sought.

**3.** Defendants challenged Frohock's calculation of Roger Lapierre's indebtedness on this loan. In a supplemental affidavit, Frohock has agreed to the figure provided by Defendants. That agreed upon figure is set forth in the text.

000. Roger Lapierre gave a personal guaranty in the same amount to secure the note and secured the guaranty with another mortgage on the Bridge Street House. The mortgage was amended in June, 1989. In September, 1989, Maine National Bank demanded payment in full of the Komwave note from both Komwave and Lapierre and notified them of their failure to comply with their obligations under the instrument. The Komwave note for $200,000 was not paid. Because Defendant Lapierre failed to pay despite the demand, he has breached the terms of his guaranty and mortgage and is in default.

According to Frohock's supplemental affidavit, as of April 13, 1992, the indebtedness owed under the $200,000 Komwave note guaranty and mortgage is $38,082.39 in principal, and $44,238.33 in interest, for a total of $82,320.72, with interest accruing at the rate of $11.33 per day. This figure differs from the calculation submitted in Frohock's initial affidavit concerning the indebtedness on the note. The adjusted figure, submitted in response to Defendant Lapierre's argument on the motion, credits payments made by Komwave toward the indebtedness. The figure does not include costs and expenses, including attorney's fees, which are also owed under the terms of the note guaranty. As of January 21, 1992, one specific cost that is owed is an appraisal fee of $2700. Again, because of the legal events described above, this debt is now owed to the FDIC rather than to Maine National Bank.

### IV.

The record also shows without dispute that on March 27, 1989, Lapierre executed and delivered to Maine National Bank a demand note in the amount of $170,000. The note was secured by a mortgage of the same date on the Bridge Street House given to the Bank. In September, 1989, the Bank made demand on Lapierre for payment in full of the $170,000 note. He has not paid the amounts due and is, therefore, in default on the note and on the mortgage securing it. Christopher Frohock's affidavit, which is undisputed on this point, shows that $170,000 in principal and $46,-038.13 in interest was due on the note as of January 21, 1992, for a total of $216,038.13, with interest accruing at the rate of $41.32 per day. Under the terms of the note and mortgage, Plaintiff is also entitled to recover the costs and expenses, including attorney's fees, of securing the property and collecting the debt. As with the previous obligations, because of the change in form of Maine National Bank, the debt is owed now to Plaintiff.

### V.

■ Under Maine law once a validly executed promissory note is produced and admitted into evidence, the maker of the note bears the burden of proving that the payment has been made. *FDIC v. Bandon,* 780 F.Supp. 60 (D.Me.1991). Here Plaintiff has produced the valid Lapierre promissory notes and guaranties. The undisputed facts show that payment on the Lapierre notes and guaranties was due and owing, and Lapierre has not come forward with evidence that payment has been made.

■ Defendants argue, however, that they are not liable on the guaranties of Komwave's obligations because under the terms of a Chapter 11 reorganization plan, approved by the Bankruptcy Court for the District of New Hampshire, the FDIC will receive payment on the Komwave obligations. Defendants state, therefore, that since Komwave's principal obligations are no longer in default, no obligation has arisen on the guaranties. The Bankruptcy Code provides that "discharge of a debt of the debtor does not affect the liability of any other entity on, or the property of any other entity for, such debt." 11 U.S.C. § 524(e). Thus, the fact that under the reorganization plan the debtor may have been relieved from the consequences of its default does not mean that a default does not exist.

The Court of Appeals for the Fifth Circuit made this point clear in *United States v. Stribling Flying Service, Inc.,* 734 F.2d 221, 222 (5th Cir.1984), where it rejected the claim of guarantors that confirmation of a reorganization plan cured the default

on the previously accelerated debt so that their guaranties now guaranteed only the restructured debt. The Court stated:

> We therefore have little difficulty in affirming the determination of the district court that the obligation of the Kimballs as unconditional guarantors of the corporate obligation to pay its Small Business Administration loan in full, was not affected by confirmation of the reorganization plan by which the corporate debt was restructured and reduced, nor by the participation of the creditor United States Agency in the Chapter XI proceedings that resulted in such restructuring and reduction of the corporate.

*Id.* at 223; *see also FDIC v. Municipality of Ponce,* 904 F.2d 740, 747 (1st Cir.1990) (holding that guarantor was not released from liability on the guaranty by discharge of debtor in bankruptcy). Here, Defendant's guaranties were separate and independent contracts, distinct from those of the principal debtor. *Casco Northern Bank, N.A. v. Moore,* 583 A.2d 697, 699 (Me.1990). Plaintiff need not have proceeded against Komwave in order to recover on the guaranties. *See Top Line Distributors, Inc. v. Spickler,* 525 A.2d 1039, 1040 (Me.1987). The Court finds no reason why Komwave's reorganization should affect Plaintiff's rights under the guaranties. Since no genuine issue of material fact remains, Plaintiff is entitled to recover principal, interest, and costs and expenses of collection on the notes and guarantees referenced in Count III.

Under Maine law the Court shall determine foreclosure of a mortgage on the basis of (1) whether there has been a breach of condition of the mortgage; (2) the amount due thereon, including reasonable attorney's fees and court costs; and (3) the order of priority and the amount due, if any, to other parties that may appear. 14 M.R.S.A. § 6322.

*Bandon,* 780 F.Supp. at 63. As shown above, there has been a breach of the four mortgages on the Bridge Street House, and Defendant Lapierre owes Plaintiff $1,174,-052.20 of principal and interest on the four mortgages plus $3200 for already ascertained costs. Defendant Lapierre also owes Plaintiff as yet unascertained sums for interest accrued since the effective date of the above calculations and for the costs and expenses, including attorney's fees, of protecting the security and collecting on the debts. Despite notice, no parties or parties-in-interest other than Roger Lapierre and his wife, Leona Lapierre, have appeared on this motion for foreclosure. Plaintiff is, therefore, entitled to foreclosure on the mortgages on the Bridge Street House.

## VI.

In its motion Plaintiff also seeks the dismissal of Count II of the complaint on the ground that the Blue Water Inn note referenced in that count has been satisfied. The Court will, therefore, grant the motion for dismissal.

## VII.

Plaintiff has also requested the entry of judgment on the motion for foreclosure under Federal Rule of Civil Procedure 54(b). Rule 54(b) provides in pertinent part:

> When more than one claim for relief is presented in an action, whether as a claim, counterclaim, cross-claim, or third-party claim, or when multiple parties are involved, the court may direct the entry of a final judgment as to one or more but fewer than all of the claims or parties only upon an express determination that there is no just reason for delay and upon an express direction for the entry of judgment.

The Court of Appeals for the First Circuit has stated that "entry of judgment under the rule should not be indulged as a matter of routine or as a magnanimous accommodation to lawyers or litigants." *Spiegel v. Trustees of Tufts College,* 843 F.2d 38, 42 (1st Cir.1988).

After the Court's grant of summary judgment in this case, Plaintiff acknowledges that there remain at least two claims for adjudication, the Plaintiff's claim set forth in Count V, seeking relief against

Defendants for transfer of assets in violation of the Uniform Fraudulent Transfers Act, and the counterclaim of the FDIC as receiver for Bank Meridian, which seeks to establish Bank Meridian's priority with respect to assets of Defendants. The answers filed in state court indicate that cross-claims also remain pending. Although Plaintiff represents that resolution of Count V and the counterclaim will have no bearing on the specific piece of property that is the subject of this motion, Plaintiff has not mentioned the cross-claims and their potential relationship, if any, to the property at issue here. Moreover, the Court does not find persuasive Plaintiff's argument that judgment should enter to stop the accrual of interest on the claims herein determined so that the sale of the Bridge Street House will be more likely to satisfy the judgment, thus precluding the need for sale of other assets. On the record before it, the court concludes that this is not an appropriate case for entry of a Rule 54(b) final judgment.

### VIII.

Accordingly, it is *ORDERED* that Plaintiff's motion for summary judgment on Count III be, and it is hereby, *GRANTED*. It is hereby *ADJUDGED* (1) that Defendant Roger Lapierre is liable to Plaintiff on the IRB guaranty and mortgage in the amount of $619,556.75 plus interest accrued at the rate of $74.48 per day from January 21 until the date of this order; (2) that Defendant Roger Lapierre is liable to Plaintiff on the March 5, 1987, demand note and mortgage in the amount of $256,-136.60, plus interest accrued at the rate of $46.67 per day from April 13, 1992 until the date of this order; (3) that Defendant Roger Lapierre is liable to Plaintiff on the Komwave note guaranty and mortgage in the amount of $82,320.72, plus interest accrued at the rate of $11.33 per day from April 13, 1992 until the date of this order; (4) that Defendant Roger Lapierre is liable to Plaintiff on the March 27, 1989 note in the amount of $216,038.13, plus interest accrued at the rate of $41.32 per day from January 21, 1992 until the date of this order; (5) that Defendant Roger Lapierre

is liable to Plaintiff for $3200 plus other as yet unspecified costs and expenses, including reasonable attorney's fees, incurred in protecting the security and collecting these debts.

It is *FURTHER ADJUDGED* that Plaintiff is entitled to foreclosure on the mortgages on the Bridge Street House described above.

By June 10, 1992, in accordance with the foregoing order, Plaintiff's counsel shall submit a proposed order specifying the amount of principal, interest charges, and costs and attorney's fees due it on the obligations herein adjudicated. Counsel shall confer forthwith and attempt to agree upon collection costs, including *reasonable* attorney's fees, *see Fleet Bank of Maine v. Steeves*, 793 F.Supp. 18 (D.Me.1992), and by June 10, 1992, shall file written submissions on any issues generated in this regard or an agreed upon resolution of such issues. In the absence of agreement, the Court will resolve any such issues upon the written submissions.

Plaintiff's motion to dismiss Count II of the complaint is hereby *GRANTED*.

Plaintiff's request for entry of judgment under Federal Rule of Civil Procedure 54(b) is hereby DENIED.

SO ORDERED.