1997 ME 139

**George BUMILA et al.**

v.

**KEISER HOMES OF MAINE, INC., et al.**

Supreme Judicial Court of Maine.

Argued May 6, 1997.

Decided June 25, 1997.

Thomas A. Dyhrberg (orally), South Portland, S. James Levis, Biddeford, for plaintiffs.

Martin I. Eisenstein (orally), Roy T. Pierce, Brann & Isaacson, Lewiston, Thomas M. Closson, Daniel P. Schwarz, Manchester, for defendants.

Before WATHEN, C.J., and ROBERTS, GLASSMAN, CLIFFORD, RUDMAN, DANA, and LIPEZ, JJ.

GLASSMAN, Justice.

[¶ 1] George Bumila, individually, and George Bumila and Frances Bumila, as trustees of the Pine Hill Estates Pension Plan and Trust (collectively referred to as the Bumilas), appeal from the judgment entered in the Superior Court (Oxford County, *Brodrick, A.R.J.*) in favor of Robert Huotari,[1] Edward Luck, Dorothy Luck, Robert Cross, L. Samuel Deegan and Hanya Kandlis (the defendants) following a nonjury trial on the Bumilas' complaint seeking, inter alia, a recovery against the defendants on their respective guarantees for the obligation of Keiser Homes of Maine, Inc. (Keiser Homes). Because we agree with the Bumilas that the guarantees executed by the defendants guar-

1. Robert Huotari did not file a brief or appear before this court.

anteed the $300,000 obligation of Keiser Homes and not the repayment of a specific promissory note, we vacate the judgment as to Counts II, III, IV, V, VI, and VII of the complaint[2] and affirm the judgment as to the remaining counts.

[¶ 2] Keiser Homes, a Maine corporation, is presently insolvent and inactive. The company constructed and sold modular and mobile homes. At the times relevant to this action the defendants, as well as George Bumila and Edward Keiser, Jr., were the shareholders and directors of Keiser Homes. Keiser also served as the president of the corporation.

[¶ 3] At a meeting in October 1988, the Keiser Homes board of directors considered expanding the company's manufacturing facility by constructing a warehouse and frame shop and discussed its options for financing the expansion. All of the directors were present at that meeting except Kandlis, who did not participate in any of the relevant meetings of the directors. After the board concluded that a financing offer from a local bank was unreasonable, Bumila stated that he would loan $300,000 to the corporation to fund the expansion. Although Bumila contemplated that the $300,000 loan would be made from the assets of the Pine Hill Estates Pension Plan and Trust, a pension trust for which he and his wife, Frances Bumila, acted as trustees,[3] he did not inform the other board members of the source of the loan. The board accepted Bumila's loan proposal, which included a requirement that each of the defendants execute a personal guaranty.

[¶ 4] The corporation retained an attorney to draft the necessary documentation for the loan transaction. A closing was held on November 23, 1988. Present at the meeting were the corporation's attorney, Keiser and Bumila. Each defendant had signed a consent, which provided:

The undersigned, being a shareholder of the corporation, hereby consents to the following action:

RESOLVED: To authorize the corporation to borrow the sum of $300,000 from George Bumila of Raynham, Massachusetts secured by a mortgage on the company's premises in Oxford, Maine and to authorize Edward K. Keiser, President of the corporation to execute the note and mortgage and to take such other acts as are necessary to accomplish the loan.

Each defendant had also signed a "LIMITED GUARANTY OF ALL LIABILITY," which was delivered to Bumila. The guarantees provide as follows:

For valuable consideration, the receipt of which is hereby acknowledged, the undersigned guarantees fulfillment to George Bumila of Raynham, Massachusetts (herein called "Bumila") of all obligations of Keiser Homes of Maine, Inc., created by a $300,000 promissory note given by Keiser Homes of Maine, Inc. to Bumila dated November 23, 1988. Notwithstanding the foregoing, the liability of the Guarantor herein shall be limited to 87% of the amount from time to time due on said note.[4]

Guarantor waives presentment, protest, notice of acceptance of this guaranty, notice of any loans made, extensions granted, or other action taken in reliance hereon and all demands and notices of every kind in connection with this guaranty or the obligations hereby guaranteed; assents to any renewal, extension or postponement of the time of payment or any other indulgence, and agrees to the provisions of the notes and/or other papers evidencing the obligations hereby guaranteed.

The Guarantor understands and agrees that the obligation or obligations being guaranteed may be evidenced by a demand note and that the interest rate on such a demand note may be variable. No change in the interest rate on any such note will in

---

2. Counts II through VII of the Bumilas' complaint set forth separately the claims against each of the named defendants seeking a recovery on that defendant's guarantee.

3. The Bumilas and two employees of the Bumilas are the beneficiaries of the trust.

4. George Bumila owned 13% of the Keiser Homes stock and did not execute a guaranty.

any way alter, discharge, or affect the liability of the Guarantor hereunder, and the Guarantor expressly waives any notice of any such change in interest rates.

This Guaranty shall inure to the benefit of Bumila, his heirs and assigns and shall be binding upon Guarantor and the executor(s), administrator(s) and/or other legal representative(s) of Guarantor. If this guaranty is signed by more than one person, whether or not they are a member of a partnership, it shall be the joint and several obligation of said persons.

The undersigned executes this guaranty in consideration of similar guarantys executed by each of the other stockholders of Keiser Homes of Maine, Inc. except George Bumila, and further in consideration of the right of each guarantor to seek contribution from the other guarantors, in the event of call on any one or more of the guarantys.

This instrument is intended to take effect as a sealed instrument.

[¶ 5] Following its execution by Keiser, a promissory note (the Bumila note), evidencing Bumila as the payee, was delivered to Bumila. In exchange, Bumila gave Keiser two checks, a $50,000 bank check and a $250,000 check from the pension trust. None of the parties at the closing noted the discrepancy between the source of the funds and the designation of Bumila individually as the creditor on the loan documentation.

[¶ 6] The first payment on the note was by a check naming Bumila individually as payee. Immediately after its receipt, Bumila contacted Keiser and requested that subsequent checks be made out to the pension trust and that Keiser contact the corporation's attorney concerning rewriting the promissory note to reflect the pension trust as the creditor. He also returned the check and asked for a replacement with the trust designated as payee.

[¶ 7] In late December 1988 or in January 1989, after Bumila had spoken with the corporation's attorney, it was agreed that the pension trust should be substituted for Bumila on the note.[5] Accordingly, the attorney prepared a new note (the pension trust note) reflecting Pine Hill Estates Pension Plan and Trust as the payee. No new consents or guarantees were executed.

[¶ 8] A meeting of the board was held on April 21, 1989. There was no discussion of the planned modifications to the Bumila note. At the conclusion of the meeting, Keiser, Bumila, Deegan and the corporation's attorney stepped into Keiser's office where Keiser executed the pension trust note. The note was dated "as of" November 23, 1988. No new consideration was exchanged. Subsequently, Bumila wrote "void and satisfied" on the Bumila note, signed it, and returned it to the corporation. The pension trust note was then forwarded to Bumila. Keiser paid approximately $145,000.00 on the note but failed to make further payments after October 23, 1990.

[¶ 9] Following the filing of answers by the individual defendants to the Bumilas' multi-count complaint,[6] they joined in a motion seeking a summary judgment in their favor on those claims based on their individual guarantees and the claims of their individual unjust enrichment. After a hearing, the court (*Marsano, J.*), granted their motion for a summary judgment on the claims of unjust enrichment.

[¶ 10] Following a three-day trial in October 1996, the court (Brodrick, A.R.J.) issued its decision in favor of the defendants on each of the remaining counts in the Bumilas' complaint. The court found that the language of the Limited Guarantees was unambiguous and guaranteed only the payment of that specific note naming George Bumila as payee. The court refused to grant relief to the Bumilas on their allegations seeking reformation of the Bumila note or ratification of the pension trust note. From the judgment entered accordingly, the Bumilas appeal.

---

5. The decision was founded at least in part on the Bumilas' concerns relating to possible adverse tax consequences that could arise if the Pine Hill Estates Pension Plan and Trust was not designated as the payee.

6. Keiser Homes failed to file an answer to the complaint and a judgment was entered in favor of the Bumilas on their claim against it.

[¶ 11] The Bumilas' principal contention is that the court erred by concluding that the guarantees were limited to the repayment of the Bumila note. They argue that the plain language of the documents relevant to this transaction demonstrates that the guarantees were not restricted to the Bumila note, but were guarantees for the unpaid balance of the $300,000 lent to Keiser Homes. We agree.[7]

[¶ 12] "Since a guarantee is a type of contract . . . guaranties are governed by the same rules of construction as other contracts." *Rosenthal v. Means,* 388 A.2d 113, 114 (Me.1978) (citation omitted). "It is a well established principle that a contract is to be interpreted to give effect to the intention of the parties as reflected in the written instrument, construed in respect to the subject matter, motive and purpose of making the agreement, and the object to be accomplished." *Foster v. Foster,* 609 A.2d 1171, 1172 (Me.1992). "The general rule is that in the absence of anything to indicate a contrary intention, instruments executed at the same time, by the same contracting parties, for the same purpose, and in the course of the same transaction will be considered and construed together, since they are, in the eyes of the law, one contract or instrument." *Kandlis v. Huotari,* 678 A.2d 41, 43 (Me. 1996) (quoting 17A Am.Jur.2d *Contracts* § 388 (1991)). Whether a contract is ambiguous is a question of law that we review de novo. *Id.*

[¶ 13] The guarantees obligate the defendants "to the provisions of the notes and/or other papers evidencing the obligations hereby guaranteed." Plainly, the pension trust note is a "paper evidencing" the guaranteed $300,000 obligation. The guarantees also provide that the guarantors "waive . . . notice of any loans made, extensions granted, or other action taken in reliance hereon" and assent to "renewal, extension or postponement of the time for payment or any other indulgence. . . ." The shareholders' consents authorize the corporation to borrow the $300,000 from Bumila and to "take such other acts as are necessary to accomplish the loan." The defendants thus granted the principals to the underlying transaction great latitude to facilitate the capitalization of their closely held corporation. Accordingly, we conclude that the court's narrow interpretation of the scope of the guarantees does not comport with the intention of the parties as reflected in the relevant documents construed as they must be with respect to the subject matter, motive and purpose of this transaction which all the parties agree was to finance the expansion of Keiser Homes. We conclude that the guarantees extend to the pension trust note.

[¶ 14] We find no merit in the defendants' contention that they should not be obligated on the pension trust note because it effectuated a material alteration of the underlying obligation. Generally, a material alteration in the principal contract, when that alteration is made after the execution of the guaranty contract and without the consent of the guarantor, discharges the guarantor if the material alteration injures the interest of the guarantor. *See, e.g., In re Spackler,* 17 F.3d 1089, 1091–92 (8th Cir.1994) (applying Missouri law). However, where, as here, the guaranty contract contemplates the alteration that the guarantor complains of, there is no discharge. 38 Am.Jur.2d *Guaranty* § 83 (1968).

[¶ 15] Moreover, we are unpersuaded that the substitution of the trust in place of Bumila constituted a material change or injured the interests of the defendants. There was no restriction on the assignment of the Bumila note. To hold the guarantees unenforceable because Bumila chose to discharge the Bumila note and accept the pension trust note instead of assigning the note to the trust would elevate form over substance. *See Essex International, Inc. v. Clamage,* 440 F.2d 547, 550 (7th Cir.1971) (change in the name of the creditor corporation does not materially alter the obligation of the guarantor).

The entry is:

that the Bumila note should be reformed or alternatively, that the defendants ratified the pension trust note.

---

7. Because we agree with the Bumilas that the guarantees extend to repayment of the pension trust note, we need not address their allegations

Judgment vacated as to Counts II, III, IV, V, VI and VII of the complaint. Remanded with instructions to enter judgment in favor of the plaintiffs on these Counts. Judgment affirmed as to the remaining Counts of the complaint.

