2002 ME 101

**JOHN NAGLE CO.**

v.

**Dennis GOKEY.**

Supreme Judicial Court of Maine.

Submitted on Briefs: May 30, 2002.

Decided: June 25, 2002.

David Dubord, Esq., Gosselin, Dubord & Rabasco, Lewiston, for the plaintiff.

Patrick Bedard, Esq., Eliot, for the defendant.

Panel SAUFLEY, C.J., and CLIFFORD, RUDMAN, DANA, ALEXANDER, and CALKINS, JJ.

RUDMAN, J.

[¶ 1] Dennis Gokey appeals from the judgment entered in the Superior Court (York County, *Brennan, J.*) finding him liable for a business debt owed to John Nagle Co. (Nagle). Gokey contends that the trial court erred when it determined that he was either a partner or joint venturer in the debtor entity and that it erred when it determined that he had not revoked or modified his contractual obligation to Nagle. We disagree and affirm the judgment.

[¶ 2] Gokey commenced doing business as Badger Island Shellfish and Lobster (Badger Island) in 1977. In December of 1995, Gokey sought to establish a business relationship with Nagle, a seafood wholesaler. To this end, he signed and delivered to Nagle a credit application in which he personally guaranteed "payment of any and all obligations past, present, and future incurred by Badger Island Shellfish and agreed to personally pay the same in the event of default of payment." In April of 1999, Gokey entered into an agreement to sell his business to Sean Goodrich. Under the terms of the contract, Goodrich was required to pay Gokey $1000 per week over a period of six years. Also, Gokey agreed to help Goodrich with the day to day operations of the business for a period of six months. The contract further provided Gokey with the right to control all business decisions made during the six year payment period. Gokey maintained access to Badger Island's books and accounts and also "loaned" money to the business on multiple occasions. The trial court found that "[t]hrough this [six year] period Mr. Gokey was actively and frequently the controlling force behind the

business." The court also found that "Gokey never explicitly revoked his guaranty."

## I. REVOCATION OF GUARANTY

[¶ 3] "A guaranty is a contract and is governed by the same rules of construction as other contracts." *Kandlis v. Huotari*, 678 A.2d 41, 43 (Me.1996). The RESTATEMENT OF SURETYSHIP AND GUARANTY defines a continuing guaranty as "a contract pursuant to which a person agrees to be a secondary obligor for all future obligations of the principal obligor to the obligee." RESTATEMENT (THIRD) OF SURETYSHIP AND GUARANTY § 16 (1995). Also, "[a] continuing guaranty is terminable, and may be terminated by the *continuing guarantor* by notice to the obligee." *Id.*

[¶ 4] "The interpretation of a continuing guaranty, as well as the question of its revocation, ordinarily is a question of fact." *Assoc'd Catalog Merchandisers, Inc. v. Chagnon*, 210 Conn. 734, 557 A.2d 525, 530 (1989.) We must uphold the trial court's factual findings if they are supported by competent evidence in the record. *Stickney v. City of Saco*, 2001 ME 69, ¶ 13, 770 A.2d 592, 600. Contrary to Gokey's contentions, we find more than adequate evidence to support the court's determination.

## II. PARTNERSHIP THEORY

[¶ 5] The Maine Partnership Act defines a partnership as "an association of 2 or more persons … to carry on as coowners [sic] a business for profit …." 31 M.R.S.A. § 286 (Supp.2001). We have stated that "the right to participate in control of the business is the essence of co-ownership." *Dalton v. Austin*, 432 A.2d 774, 777 (Me.1981). Nonetheless, whether a partnership has been formed is a fact intensive inquiry in which "[n]o one factor alone is determinative." *Id.* "Evidence relevant to the existence of a partnership includes evidence of a voluntary contract between two persons to place their money, effects, labor, and skill, or some or all of them, in lawful commerce or business with the understanding that a community of profits will be shared." *Id.* Although the sharing of profits is prima facie evidence of a partnership, 31 M.R.S.A. § 287(4) (1996), its absence does not automatically preclude the existence of a partnership relationship.

[¶ 6] "A joint venture is an association between two or more individuals or entities who agree to pool their efforts and resources to jointly seek profits." *Nancy W. Bayley, Inc. v. Employment Sec. Comm'n*, 472 A.2d 1374, 1377 (Me.1984). Moreover, a joint venture can be found "where persons embark on an undertaking without entering on the prosecution of the business as partners strictly but engage in a common enterprise for their mutual benefit." *Simpson v. Richmond Worsted Spinning Co.*, 128 Me. 22, 29, 145 A. 250, 253–54 (1929) (quoting *Hey v. Duncan*, 13 F.2d 794, 795 (7th Cir.1926)). Like a partnership, whether a joint venture exists depends upon the *circumstances surrounding* the parties' relationship. *Id.* at 30, 145 A. at 254. Therefore, although very similar to a partnership, a joint venture is "generally more limited in scope and duration." *Nancy W. Bayley, Inc.*, 472 A.2d at 1377.

[¶ 7] Again, we "must uphold the Superior Court's conclusion that a partnership [or joint venture] existed if competent evidence exists on the record to support that legal conclusion." *Dalton*, 432 A.2d at 776. Although Gokey cannot be said to have shared in the profits of Badger Island, *see* 31 M.R.S.A. § 287(4), there is no doubt that he consistently played an important role in all facets of the business. Pursuant to the agreement with Goodrich, Gokey involved himself in the day to day operations of the business. Even after the initial six month period, Gokey frequented the business's premises, made business de-

cisions without consulting Goodrich, had complete access to Badger Island's books and accounts, and infused money into the business. Gokey essentially maintained, and often exercised, total control over Badger Island. We conclude that there was competent evidence to support the trial court's finding.

The entry is:

Judgment affirmed.