STATE OF MAINE
CUMBERLAND, ss.

SUPERIOR COURT
CIVIL ACTION
DOCKET NO: CV-06-731
RAC - CUM - 12/14/2007

RUFUS DEERING COMPANY,

Plaintiff,

v.

JAMES F. KEELEY, JR.

Defendant.

ORDER ON CROSS
MOTION FOR SUMMARY
JUDGMENT PURSUANT TO
M.R. CIV. P. 56

DONALD L. GARBRECHT
LAW LIBRARY

JAN 24 2008

This case comes before the Court on cross motions for Summary Judgment pursuant to M.R. Civ. P. 56.

## FACTUAL BACKGROUND

Plaintiff Rufus Deering Company (RDC) filed a claim on April 13, 2007 against Defendant James F. Keeley, Jr. (Keeley) for breach of a credit agreement, breach of a guaranty agreement, unjust enrichment and accounts due. Keeley brought counterclaims against RDC 1) seeking a declaratory judgment that Keeley is not liable for any amounts due RDC, 2) for unjust enrichment on the amounts already received by RDC from KCCI and National Grange should Keeley be found liable, 3) for fraud in representing in a bankruptcy proceeding that KCCI owed all the moneys to RDC. Both parties now move for summary judgment.

The primary issue before this Court is whether Keeley can be held personally liable pursuant to a personal guarantee made thirty years ago for the debts of his subsequently formed corporation. RDC is a building and lumber supply company that was founded in 1854. Keeley was initially the owner (sole proprietor) of a general contracting company, known as Keeley Construction,

1

which was created in 1977. In 1979, Keeley incorporated and the business became Keeley Construction Company, Inc. (KCCI). Keeley has maintained control of KCCI, is the president, treasurer and the sole shareholder of KCCI and has never held less than 90% of KCCI stock.

In 1977, Keeley Construction entered into a credit agreement with RDC for the purchase of building and lumber supplies. Keeley personally signed as applicant and personally guaranteed the credit agreement. The guaranty dated July 27, 1977 (Guaranty) reads as follows:

> In order to induce Rufus Deering Company to extend credit pursuant to this application, the undersigned hereby absolutely guarantees prompt payment to Rufus Deering Company, of any and all sums now owing or which may become owing to said Rufus Deering by the Applicant hereunder.

(Moody Dep. Ex. 3.) Pursuant to the 1977 credit agreement, RDC sold supplies to Keeley Construction and subsequently to KCCI until 2004. KCCI never entered into an independent credit agreement with RDC, nor did Keeley ever expressly revoke the Guaranty. The Keeley Construction account maintained by RDC remained the same after incorporation and monthly statements were sent to the address on the 1977 credit application.

The parties dispute whether or not RDC had notice of the incorporation. KCCI asserts that all purchase orders and correspondence between KCCI and RDC were imprinted with KCCI's corporate status. RDC counters that it was never expressly informed of the transformation from sole proprietorship to corporation until KCCI filed for Chapter 11 bankruptcy.

KCCI entered several periods of financial difficulty and was, at times, unable to pay its obligations to RDC. RDC met with KCCI representatives

2

several times to discuss payment options at KCCI corporate headquarters. KCCI signage clearly indicated that it was a corporate entity.

In October 2002, KCCI filed for Chapter 11 bankruptcy protection in the bankruptcy court for the District of Maine (Bankruptcy Proceeding). KCCI notified its creditors including RDC of the bankruptcy. RDC subsequently filed two proofs of claim (POCs) with the bankruptcy court alleging outstanding invoices due from KCCI totaling $162,217.29.

KCCI challenged the accuracy of RDC's POCs. RDC and KCCI eventually came to a settlement agreement on the amount due RDC. RDC sent KCCI an e-mail confirming the agreed to amount, but specifically reserved its claims against guarantors. The bankruptcy court entered a final order approving the settlement agreement.

The Bankruptcy Proceeding culminated in a plan of re-organization confirmed by the bankruptcy court in December 2003. When the plan was initially proposed in the Bankruptcy Proceeding in November 2003, KCCI attempted to discharge Keeley's liability for any debts jointly and severally owed by KCCI and Keeley. RDC objected to such discharge and reserved its right to make a claim against Keeley as an affiliate of KCCI. Neither party disputes that the plan was so amended or that RDC preserved its claims against Keeley.

Pursuant to that plan, KCCI agreed to pay its trade creditors forty percent of their allowed claims. Accordingly, KCCI paid RDC $38,618.33 which reflected 40% of the agreed to settlement amount on the POCs. The parties have stipulated that $154,118.20 was outstanding to RDC for goods delivered to KCCI as of October 28, 2002. (Def. Op. SMF ¶ 42.) KCCI emerged from bankruptcy on March 9, 2005 and the Bankruptcy Proceeding was terminated.

3

RDC also sought redress for its claims against KCCI from National Grange Mutual Insurance Company (National Grange), an insurance company that provided surety bonds for certain KCCI projects. National Grange paid RDC $58,001.23, based on documents submitted by RDC alleging amounts due from KCCI. Keeley was required to personally indemnify the National Grange payments.

RDC's total claim as of July 31, 2007 in this case is $174,439.32, which equals the total amount originally claimed under the Bankruptcy Proceeding POCs minus the amounts already paid by National Grange ($58,001.23) and KCCI pursuant to the bankruptcy settlement agreement and the bankruptcy plan ($38,618.33), plus 18% interest accruing monthly.

Keeley claims that all amounts due RDC were settled in the Bankruptcy Proceeding and consequently, RDC is collaterally and equitably estopped from pursing him personally. Moreover, all contracts were with KCCI as a corporate entity, a fact of which RDC was clearly aware. That knowledge of KCCI's corporate status, it is argued, effectively revokes the personal guarantee.

In addition, Keeley counterclaims seeking a declaratory judgment that Keeley is not liable for any amounts due RDC. He further claims that, should the court find him liable under the Guaranty, he has a claim for unjust enrichment on the amounts already received by RDC from KCCI and the National Grange and for fraud in the bankruptcy proceeding for representing that KCCI owed all the monies claimed by RDC.

RDC counters that Maine guaranty law finds a continuing obligation owed by Keeley in spite of the incorporation because there was no material alteration in the principal contract that would discharge Keeley from the

4

Guaranty. Based on this continuing obligation under the Guaranty and because RDC expressly preserved its right to sue Keeley as a personal guarantor neither the fraud nor the unjust enrichment claim can stand. Consequently Keeley remains personally liable for all amounts outstanding.

## STANDARD OF REVIEW

Summary judgment is proper where there exist no genuine issues of material fact such that the moving party is entitled to judgment as a matter of law. M.R. Civ. P. 56(c); *see also Levine v. R.B.K. Caly Corp.*, 2001 ME 77, ¶ 4, 770 A.2d 653, 655. A genuine issue is raised "when sufficient evidence requires a fact-finder to choose between competing versions of the truth at trial." *Parrish v. Wright*, 2003 ME 90, ¶ 8, 828 A.2d 778, 781. A material fact is a fact that has "the potential to affect the outcome of the suit." *Burdzel v. Sobus*, 2000 ME 84, ¶ 6, 750 A.2d 573, 575. "If material facts are disputed, the dispute must be resolved through fact-finding." *Curtis v. Porter*, 2001 ME 158, ¶ 7, 784 A.2d 18, 22. When a defendant seeks summary judgment, a "plaintiff must establish a prima facie case for each element of her cause of action." *Champagne v. Mid-Maine Med. Ctr.*, 1998 ME 87, ¶ 9, 711 A.2d 842, 845. At this stage, the facts are reviewed "in the light most favorable to the nonmoving party." *Lightfoot v. Sch. Admin. Dist. No. 35*, 2003 ME 24, ¶ 6, 816 A.2d 63, 65.

## DISCUSSION

I.  **Under Maine Law, Does the Transformation of a Sole Proprietorship Into a Corporation, Where Creditors Have Notice of the Incorporation,[1] Effectively Revoke Any Personal Guarantees Made by the Sole Proprietorship?**

The specific question before this Court is one of first impression in Maine.

### a. General Principals of Maine Guaranty Law

Under Maine law, a guaranty is considered a contract and is "governed by the same rules of construction as other contracts." *Bumila v. Keiser Homes of Maine, Inc.*, 1997 ME 139, ¶ 10, 696 A.2d 1092, 1094 (*quoting Rosenthal v. Means*, 388 A.2d 113, 114 (Me. 1978)). It is well settled in Maine that a contract must be construed in light of the "subject matter, motive and purpose of making the agreement and the object to be accomplished." *Id.* Moreover, "instruments executed at the same time, by the same contracting parties, for the same purpose, and in the course of the same transaction will be considered and construed together, since they are, in the eyes of the law, one contract or instrument." *Id.* (*quoting Kandlis v. Huotari*, 678 A.2d 41, 43 (Me. 1996)).

### b. Continuing Guaranty

A continuing guaranty is "a contract pursuant to which a person agrees to be a secondary obligor for all future obligations of the principal obligor to the obligee." *John Nagle Co. v. Gokey*, 2002 ME 101, ¶ 3, 799 A.2d 1225, 1227 (*quoting*

---

[1] The Court will assume, *arguendo*, that RDC did have notice of Keeley's incorporation though this fact is disputed. It strains credulity to believe that RDC did not have such notice when they admit that they attended meetings at KCCI headquarters where the corporate logo was abundantly displayed. Ultimately such notice is deemed immaterial to the analysis.

*Restatement (Third) of Suretyship and Guaranty § 16 (1995))*.[2] Such a continuing

guaranty "may be terminated by the continuing guarantor by notice to the

obligee." *Id.* "If the continuing guarantor is a natural person, the continuing

guaranty is terminated by the death of the continuing guarantor unless the

continuing guaranty provides otherwise." *Id.* The guarantor may also be

discharged of the continuing obligation if a material alteration occurs in the

principal contract, without the consent of the guarantor, which injures the

interest of the guarantor. *Bumila*, 1997 ME 139, ¶ 14, 696 A.2d at 1094 (citations

omitted). Both the continuing guaranty and its revocation are ordinarily

questions of fact. *Id.* ¶ 4, 799 A.2d at 1227.

### c. The Effect of Incorporation on Continuing Guarantees

There is a split of authority whether incorporation with notice of the

incorporation to creditors effectively terminates or revokes a continuing

guaranty. *Compare* NEBCO, *Inc. v. Adams*, 704 N.W.2d 777 (Neb. 2005)(finding

that the transformation of a sole proprietorship to a corporation did not revoke a

personal guaranty entered into prior to the incorporation) with *American*

*Hardware Supply v. Alan Supply, Inc.*, 580 N.E.2d 473, 477 (Ohio App.

1989)(expressly rejecting a "form over substance" argument and finding the

transformation with notice from sole practitioner to corporation released

defendant under a guaranty in a state where guaranty contracts are strictly

construed).

---

[2] *See also Handy Boat Service, Inc. v. Professional Services, Inc*, 1998 ME 134, ¶ 9, 711
A.2d 1306, 1308 (finding a guaranty with the words "unconditionally guarantees
to [ ] the complete performance of all obligations" sufficient to create a
continuing obligation on a concurrently signed lease, which lease was
subsequently modified).

Maine guaranty law is in line with the modern view, wherein a secondary obligor is discharged "only to the extent it would otherwise suffer loss as a result of the modification" of an underlying agreement. *Center 48 Limited P'ship v. The May Dept. Stores Co.*, 810 A.2d 610 (NJ Super. 2002) (*citing Bumila*, 1997 ME 139, 696 A.2d at 1094).[3] Consistent with this view the Supreme Court of Nebraska found a sole proprietor who entered into a guaranty agreement was bound for subsequent debts of his later formed corporation. *See NEBCO*, 704 N.W.2d 777. The *NEBCO* court found a continuing obligation because "the nature of Adams' business after incorporation was substantially the same as when the guaranty was signed." *Id.* at 780. The degree to which the plaintiff knew Adams' corporate status was not considered a material issue. *Id.* at 784.

In this case the material facts are not disputed. Keeley purchased building supply materials from RDC before and after incorporation. Keeley effected the incorporation and retained sole control over the corporation. The credit agreement entered into by Keeley as a sole proprietor remained in place, unaltered after incorporation. The credit agreement was executed concurrently with the Guaranty. Those agreements must be construed together and are, in the eyes of the law, one contract. *See Bumila*, 1997 ME 139, ¶ 10, 696 A.2d at 1094. Moreover, unlike the cases cited by Keeley, which strictly construed contract

---

3     Noting that the traditional rule, that a secondary obligor was completely discharged by a modification of the underlying obligation, 'was often applied in a mechanical almost mindless way,' the Restatement chose to adopt 'the more modern policy. . . of discharging the secondary obligor only to the extent it would otherwise suffer loss as a result of the modification.'

*Id.* (*quoting Restatement (Third) of Suretyship and Guaranty* § 41(b)(i)(1996)).

language, Maine law interprets contracts in light of the "subject matter, motive and purpose of making the agreement and the object to be accomplished." *Id.*

This Court finds the reasoning of the *NEBCO* court persuasive and deems notice of incorporation immaterial. The material facts are 1) the concurrence of the credit agreement and the Guaranty, 2) the plain language of the Guaranty evidencing the continuing nature of the guaranty,[4] 3) the lack of an express revocation by Keeley, 4) Keeley's sole control over incorporation and over the business of the corporation, and 4) the substantially similar business pursued by Keeley after incorporation indicating no material alteration that would injure Keely's interest as guarantor.[5]

No material facts are disputed that bear on the issue before this court; consequently, judgment as a matter of law is appropriate. As a matter of law, a continuing guaranty is not effectively revoked upon incorporation, unless the incorporating entity can show that the continuing guaranty was expressly revoked, or that incorporation materially altered the nature of the business to the extent that enforcement of the continuing guaranty would injure the interest of the guarantor.

---

[4] The Guaranty states:

> In order to induce Rufus Deering Company to extend credit pursuant to this application, the undersigned hereby absolutely guarantees prompt payment to Rufus Deering Company, of any and all sums now owing or which may become owing to said Rufus Deering by the Applicant hereunder (emphasis added).

[5] The *Bumila* court specifically refused to "elevate form over substance" and noted that a "change in the name of the creditor corporation does not materially alter the obligation of the guarantor." *Bumila*, 1997 ME 139, ¶ 15, 696 A.2d at 1994 (*citing Essex Int'l Inc. v. Clamage*, 440 F.2d 547, 550 (7th Cir. 1971)).

## II. Keeley's Affirmative Defenses and Counterclaims

Keeley claims, *inter alia*, that RDC's claims are 1) barred by the Bankruptcy Proceeding, 2) equitably and/or collaterally estopped, 3) should Keeley be held personally liable, RDC was unjustly enriched in the Bankruptcy Proceeding and by National Grange, and 4) RDC's representations of the amounts due from KCCI in the Bankruptcy Proceeding were fraudulent based on its current claims against Keeley personally.

### A. Judicial Estoppel

The rule of judicial estoppel precludes a party from "asserting a claim in a legal proceeding that is inconsistent with a claim taken by that party in a previous proceeding." *New Hampshire v. Maine*, 532 U.S. 742, 749 (2001) (*quoting* 18 C. Wright, A. Miller, & E. Cooper, *Federal Practice and Procedure* § 4477 at 782 (1981)). To judicially estop an opposing party:

> (1) the position asserted in the subsequent legal action must be clearly inconsistent with the previous position asserted; (2) the party in the previous action must have successfully convinced the court to accept the inconsistent position; and (3) the party must gain an unfair advantage as a result of their change of position in the subsequent action.

*Linnehan Leasing v. State Tax Assessor*, 2006 ME 33, ¶ 25, 898 A.2d 408, 414 (*citing Id.* at 750-51).

It is undisputed that RDC preserved its rights under the Bankruptcy proceeding to seek redress from affiliates of KCCI as guarantors or indemnifiers under the credit agreement. *See* D.Op.S.M.F. ¶ 32, 34. It is also undisputed that Keeley attempted to discharge any liability for debts jointly or severally owed by KCCI and Keeley. *See Id.* at ¶ 31. Additionally, Keeley admits that he is an affiliate of KCCI. *See Id.* at ¶ 33. Consequently, RDC's claims against Keeley as a

guarantor are not clearly inconsistent with the previous position asserted in the Bankruptcy and thus not barred by that action.

The parties entered into a settlement agreement regarding the amount payable to RDC by KCCI on the POCs. The agreed to amount was $90,296.32. *See Id.* at ¶ 37. In an e-mail confirming the settlement, RDC again preserved its right to pursue guarantors. *Id.* at ¶38. Keeley disputes that that reservation applies to him. *Id.* This Court finds that the reservation did apply to Keeley as reflected in the Guaranty.

### B.     Unjust Enrichment

Furthermore, Keeley's unjust enrichment claim cannot stand because, as stipulated by the parties, RDC's total claim under the bankruptcy was $154,118.20. It is undisputed that the total amount recovered by RDC to date from KCCI (both pursuant to bankruptcy and from National Grange) total $90,296.32. Consequently, if Keeley is a secondary guarantor, seeking the remaining balance would not unjustly enrich RDC.

### C.     Fraud

Nor can Keeley's claims of fraud stand. There is simply no evidence in the record to indicate that RDC misrepresented its position in the Bankruptcy Proceeding. To the contrary, RDC specifically preserved its claims against guarantors, and is currently pursuing those claims.

Based on the stipulated and undisputed material facts in this case, this Court grants RDC's motion for summary judgment on the counterclaims.

**Therefore, the entry is:**

Defendant's Motion for Summary Judgment is DENIED.

Plaintiff's Motion for Summary Judgment on Defendant's counterclaims is GRANTED.

Plaintiff's Motion for Summary Judgment on claims against Defendant is GRANTED. Defendant is liable as a guarantor for any outstanding claims held by Plaintiff against Keeley Construction Company, Inc.

The Court will set up an evidentiary hearing on amounts due.

The clerk shall incorporate this Order into the docket by reference pursuant to M.R. Civ. P. 79(a).

Dated at Portland, Maine this _14th_ day of _December_, 2007.

Roland A. Cole
Justice, Superior Court

F COURTS
ınd County
ox 287
ne 04112-0287

GEORGE MARCUS ESQ
100 MIDDLE STREET EAST TOWER
PORTLAND ME 04101-4102

*Defendants*

F COURTS
and County
3ox 287
ne 04112-0287

AARON BURNS ESQ
PO BOX 108
PORTLAND ME 04112

*Plaintiff*

STATE OF MAINE                                              SUPERIOR COURT
CUMBERLAND, ss.                                             CIVIL ACTION
                                                           DOCKET NO: CV-06-371

RUFUS DEERING COMPANY,          2008 MAY 30  P 3: 03

            Plaintiff,
                                            ORDER

    v.
                                            DONALD L. GARBRECHT
JAMES F. KEELEY, JR.                        LAW LIBRARY

            Defendant.                      JUN  9 2008

DONALD L. GARBRECHT
LAW LIBRARY

JUN  9 2008

This case comes before the Court for a hearing on damages pursuant to an

Order on Summary Judgment entered by this Court on December 14, 2007.

## FACTUAL BACKGROUND

Summary Judgment was entered in favor of Plaintiff Rufus Deering

Company (RDC) holding Defendant James F. Keeley, Jr. (Keeley) liable as a

guarantor for any outstanding claims held by RDC against Defendant Keeley

Construction Company, Inc. (KCCI). KCCI emerged from bankruptcy on March

9, 2005, (Bankruptcy Proceeding) having paid RDC $38,618.33 which reflected

40% of the agreed to allowed claim of $90,296.32 on the disputed Proofs of Claim

(POCs).

Keeley claims that the above payment reflects the full payment of any and

all outstanding claims of RDC against KCCI and that, accordingly, no damages

are due. RDC claims that KCCI's underlying debt remains the stipulated to

amount of $154,118.20, minus payments made and including accrued interest

($190,739.50 as of December 31, 2007) plus attorneys fees.

1

## DISCUSSION

### I. Guarantor in Bankruptcy Action

It is well settled that a guarantor's obligation cannot not exceed the liability of the primary obligor. *See e.g. In re: LaBonne*, 84 B.R. 309, 311 (Ct. Bankr. 1988). KCCI argues that all of its obligations to RDC were satisfied upon discharge of the Bankruptcy Proceeding. However, it is equally well settled that a guarantor is "not released from liability on the guaranty by discharge of debtor in bankruptcy." *FDIC v. LaPierre*, 144 B.R. 581, 585 (D.Me. Bankr. 1992) *(citing FDIC v. Municipality of Ponce*, 904 F.2d 740747 (1st Cir. 1990)). Accordingly, this Court must determine if KCCI has any further obligation to RDC subsequent to the Bankruptcy Proceeding, which obligations have been personally guaranteed by Keeley.

### II. Allowed Claim

In the Bankruptcy Proceeding, RDC had an allowed claim against KCCI of $90,296.32.[1] In this case, the $90,296,32 reflected an agreement reached by the parties in order to settle a dispute, with prejudice, over the total amounts due by KCCI on RDC's invoices, which agreement was accepted by the Bankruptcy Court. *See* Exhibits P and Q. The allowed claim was not an estimated amount reached by the Bankruptcy Court, nor did the parties agree to the claims proferred initially by RDC in the bankruptcy action. As stated in this Court's previous order, a party is judicially estopped from "asserting a claim in a legal proceeding that is inconsistent with a claim taken by that party in a previous

---

[1] An "allowed claim" is a term unique to bankruptcy law. *Collier on Bankruptcy* ¶ 502.01 (15th Ed. 2007). The bankruptcy court determines the scope of an allowed claim by 1) mutual acceptance of POCs by all parties, 2) a determination of the court after objection to a POC, or 3) an estimation of a claim by the court. *Id.*

2

proceeding." *New Hampshire v. Maine*, 532 U.S. 742, 749, 121 S. Ct. 1808, 149 L. Ed. 2d 969 (2001) (quotations omitted). Although this Court also recognized previously that RDC preserved its rights under the Bankruptcy proceeding to seek redress from affiliates of KCCI such as Keeley, that does not authorize RDC to seek more than the liability of the primary obligor.

**Therefore, the entry is:**

> Defendant is liable as a guarantor for the outstanding claim of $51,677.99 plus accrued interest (1.5 % per month) held by Plaintiff against Keeley Construction Company, Inc. The amount reflects the underlying debt of KCCI agreed to in the bankruptcy action minus the amount paid by KCCI pursuant to the bankruptcy action (40% of the allowed claim).

> Plaintiff is further entitled to attorneys' fees for the Superior Court action ONLY and shall submit the appropriate application to the Court.

> The clerk shall incorporate this Order into the docket by reference pursuant to M.R. Civ. P. 79(a).

Dated at Portland, Maine this _30th_ day of ___July___, 2008.

Roland A. Cole
Justice, Superior Court

3

DAVID JOHNSON ESQ
100 MIDDLE STREET EAST TOWER
PORTLAND ME 04101

Defendant

AARON BURNS ESQ
PO BOX 108
PORTLAND ME 04112

Plaintiff